[Cite as *Wells Fargo Bank, N.A. v. Aey*, 2013-Ohio-5381.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | CASE NO.    12 MA 178 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| MICHELE AEY, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |


CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 11CV1603.


JUDGMENT:                          Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Scott King
                                   Attorney Jeremy Smith
                                   Austin Landing I
                                   10050 Innovation Drive, Suite 400
                                   Dayton, Ohio  45342


For Defendants-Appellants:         Attorney Bruce Broyles
                                   5815 Market Street, Suite 2
                                   Boardman, Ohio  44512


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated:  December 4, 2013

VUKOVICH, J.

{¶1} Defendants-appellants Michele and Mark Shane appeal the decision of the Mahoning County Common Pleas Court granting summary judgment for plaintiff-appellee Wells Fargo Bank, N.A. in its foreclosure action. We conclude that the borrowers' response to summary judgment raised a genuine issue of material fact as to the bank's compliance with regulations of the Secretary of HUD dealing with whether a face-to-face meeting was offered and whether the bank evaluated the borrowers for loss mitigation after starting the process.

{¶2} Contrary to the bank's position, we hold that it was not the borrowers' burden to additionally show that none of the exceptions applied in order to avoid summary judgment. Rather, after the borrower sufficiently demonstrated that no face-to-face meeting was offered and the bank improperly refused to complete the loan modification evaluation that it began, it would then fall to the bank to explain what exception applied or how those regulations were inapplicable in this particular case. We thus reverse the entry of summary judgment and remand for further proceedings.

STATEMENT OF THE CASE

{¶3} In 2003, Mark Shane and Michele Aey nka Shane signed a promissory note in favor of Wells Fargo for approximately $98,000 and entered a corresponding mortgage on their condominium at 3682 Mercedes Place in Canfield. They defaulted on the loan in September 2010 and began the loan modification process.

{¶4} On May 20, 2011, the bank filed a complaint seeking judgment on the note and mortgage and asking for foreclosure on the property. The Shanes wrote a letter to the court asking for mediation because they were in the process of attempting a loan modification. Six months later, the bank filed a motion for default judgment. The Shanes then obtained counsel, and the court granted leave to file an answer.

{¶5} The answer stated that they lacked sufficient information or knowledge as to whether the bank fulfilled all conditions precedent to acceleration of the debt

and filing of the foreclosure complaint. The answer listed two affirmative defenses: failure to state a claim and failure to meet all conditions precedent to the filing of a foreclosure complaint, alleging a failure to comply with all requirements of the HUD Secretary's regulation as required by paragraph 9(d) of the mortgage.

**{¶6}** The bank filed a motion for summary judgment stating that under the note and mortgage, they had the absolute right to accelerate the balance of the loan upon default and to then file the foreclosure action. The motion stated that there was no evidence that it failed to comply with HUD regulations and that this claim was false. Attached to the bank's motion for summary judgment was an affidavit reciting the loan, the default, the failure to cure the default, and the amount owed. The affidavit stated that debt was accelerated pursuant to the terms of the loan. Also attached to the motion for summary judgment was an April 12, 2011 notice of default and acceleration from the bank to the Shanes, showing a delinquency of $4,672.36.

**{¶7}** The Shanes filed a memorandum in opposition. They claimed that the acceleration letter did not sufficiently set forth the dollar amount that must be paid because after setting forth the specific amount due, it stated that they must pay any additional amounts due after the date of the notice. (The Shanes do not pursue this argument on appeal). Also regarding the acceleration letter, they noted the letter could not be used to show that the bank gave notice of its intent to accelerate the loan because it was unauthenticated summary judgment evidence; however, they never alleged that they did not receive a required notice. The Shanes also argued that Wells Fargo failed to offer a face-to-face meeting as required by Secretary of HUD regulation § 203.604(b) and made no legitimate effort to evaluate them for loss mitigation as required by other HUD regulations.

**{¶8}** The affidavit of Michele Shane was attached to their response. She stated that they fell behind in payments in September 2010 after she lost her job while on Family Medical Leave, noting that she had to retain counsel to retain her job. She spoke to the bank about her circumstances. She stated that they were in the loan modification process at the time the complaint was filed, they provided the bank with all documents requested, but the bank said the documents were missing, had

been lost, or had become outdated. She also alleged that the bank did not attempt to arrange a face-to-face meeting, that they did not receive a letter offering such a meeting, and that no representative offered a face-to-face meeting. The memorandum concluded that this established a genuine issue as to whether the bank completed the required loss mitigation evaluation and offered a face-to-face meeting prior to filing the complaint.

{¶9} On August 23, 2012, the trial court granted summary judgment in favor of the bank. The Shanes filed a timely notice of appeal. They set forth one assignment of error, generally stating that the trial court erred in granting summary judgment for the bank because they raised genuine issues of material fact. Three separate issues presented under this assignment of error discuss the following topics: (1) the alleged failure to offer a face-to-face meeting; (2) the alleged failure to make a legitimate effort to evaluate appellants for loss mitigation; and (3) the unauthenticated acceleration letter attached to the motion for summary judgment.

SUMMARY JUDGMENT

{¶10} Summary judgment can be granted where there remain no genuine issues of material fact for trial and where, after construing the evidence most strongly in favor of the nonmovant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith*, 110 Ohio St.3d 24, 850 N.E.2d 47, 2006-Ohio-3455, ¶ 10, citing Civ.R. 56(C). The burden of showing that there are no genuine issues of material fact initially falls upon the party who files for summary judgment. *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

{¶11} Thereafter, the nonmovant may not rest upon mere allegations or denials in the party's pleadings but must respond by setting forth specific facts showing that there is a genuine issue for trial. *Id.*, citing Civ.R. 56(E). If the non-movant does not so respond, summary judgment, if appropriate, shall be entered against him. Civ.R. 56(E). Summary judgment is not to be discouraged where a nonmovant fails to respond with evidence supporting the essentials of his claim, but courts are cautioned to construe the evidence in the light most favorable to the

nonmoving party. *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).

BORROWERS' RESPONSE TO SUMMARY JUDGMENT

{¶12} The trial court released its entry granting summary judgment for the bank on August 23, 20012. Notably, the entry states that the cause was submitted upon the complaint, the amended answer, the plaintiff's motion for summary judgment, and the evidence. It does not mention the borrower's memorandum in opposition. This may suggest that the court did not consider the borrower's opposition evidence.

{¶13} Mahoning County Local Rule of Civil Procedure 6(A)(2) generally provides that opposition briefs to all motions shall be filed no later than 14 days from the date the motion was filed unless an extension is granted with leave of court. That rule continues to state, "In no event shall an opposition brief be filed later than 5 days prior to the non-oral hearing date."

{¶14} The bank's motion for summary judgment was filed on July 9, 2012; we note that the date on the certificate of service is not filled in the copy of the motion filed with the court. Prior to the expiration of the fourteen-day period provided in the local rule, a July 19 magistrate's decision set the motion for non-oral hearing on August 20, 2012. The borrowers filed their memorandum in opposition on August 17, 2012.

{¶15} Civ.R. 56(C) provides that a motion for summary judgment shall be served at least fourteen days before the time fixed for hearing. The rule continues: "The adverse party, prior to the day of hearing, may serve and file opposing affidavits." Civ.R. 56(C). As the borrower's affidavit was filed prior to the day the trial court expressly set for the hearing, it was timely under Civ.R. 56(C) alone.

{¶16} The particular question here becomes: Where a scheduling order, which is entered prior to the 14-day deadline set by local rule, sets a non-oral hearing date and does not otherwise specify submission deadlines, does a local rule that provides that an opposition must be filed within 14 days and no later than five days prior to the non-oral hearing date justify the exclusion of an opposition brief and

attached affidavits even though Civ.R. 56(C) provides that the opposing affidavit may be filed on the day prior to the hearing date?

**{¶17}** Civ.R. 56(C) anticipates a cutoff date for a response to a motion for summary judgment, but the rule does not explicitly apprise the parties of that date and thus notice of the deadlines must come from some other source. *Hooten v. Safe Auto Ins. Co.*, 100 Ohio St.3d 8, 2003-Ohio-4829, 795 N.E.2d 648, ¶ 22. Fundamental fairness is one of the overriding goals of Civ.R. 56 as a summary judgment motion involves high stakes. *Id.* at ¶ 34. Summary judgment should be granted only after all parties have had a fair opportunity to be heard. *Id.*

**{¶18}** "Obviously, if the trial court does set an explicit hearing date for the summary judgment motion, it succeeds in providing the requisite notice." *Id.* at ¶ 23. Alternatively, if the trial court sets actual dates for each parties' filings, the requisite notice is provided. *Id.* And, local rules can be sufficient to provide notice of the date of the summary judgment hearing or of deadlines for submission of memoranda and Civ.R. 56 materials. *Id.* at ¶ 33, 35 (the better practice is to explicitly set cut-off dates for submission of materials and any hearing date, but if a local rule provides notice of either of these dates, then Civ.R. 56 is not violated).

**{¶19}** However, the local rule must complement the basic structure of Civ.R. 56 and not contradict it. *See id.* at ¶ 29. Local rules cannot be inconsistent with the rules promulgated by the Supreme Court, and thus, the Civil Rules will prevail over inconsistent local rules. *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 554, 597 N.E.2d 153 (1992).

**{¶20}** Civ.R. 56(C) states that the non-movant can file his or her affidavit prior to the day set for the hearing, but the local rule states that this is untimely as it must be done five days prior to the day set for non-oral hearing. This is a direct conflict. We also note that the local rule provides 14 days from the day the motion is *filed* whereas Civ.R. 56(C) provides at least 14 days from the day the motion is *served*, and here the service date is not filled in. In addition, before the local rule's 14-day deadline had passed, the magistrate's order expressly set a non-oral hearing date. Applying the plain language of Civ.R. 56(C), the submission deadline would have

been the day prior to the non-oral hearing date. In other words, the magistrate's scheduling order essentially extended the local rule's 14-day deadline.

**{¶21}** We conclude that where the non-oral hearing date was set by the magistrate's scheduling order, especially where such order was issued prior to the 14-day submission deadline set by local rule, the timeframe in Civ.R.56(C) prevails over that contained in the local rule. *Compare Vinylux Prods., Inc. v. Commercial Financial Group*, 9th Dist. No. 22553, 2005-Ohio-4801, ¶ 8 (where no hearing scheduled, time for filing opposition brief is determined by consulting local rule requiring an opposition brief to be filed within 14 days of summary judgment motion); *Gaul v. Sterling Plate Glass & Paint Co.*, Cuyahoga App. No. 64842 (Aug. 25, 1994) (where no hearing was scheduled, local rule's thirty-day response time applied). Accordingly, we shall consider the borrowers' response and affidavit in conducting our de novo review of summary judgment.

CONTRACTS & DISPUTED HUD REGULATIONS

**{¶22}** Both the note and mortgage incorporate by reference HUD regulations. Paragraph 6(B) of the note states that if the borrower defaults, the lender may require immediate payment in full of the principal balance and accrued interest "except as limited by regulations of the [HUD] Secretary in the case of payment defaults * * *." This paragraph continues to explain: "In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations."

**{¶23}** Paragraph 9(a)(i) of the mortgage similarly provides that if the borrower defaults, the lender may "except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums * * *." Paragraph 9(d) of the mortgage, entitled "Regulations of HUD Secretary," continues: "In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

**{¶24}** The borrowers rely upon certain regulations contained in 24 U.S.C. § 203. As to the face-to-face meeting, appellants cite, § 203.604(b), which provides: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."

**{¶25}** As to the loan modification argument, appellants cite the following regulations:

**{¶26}** § 203.471 Special forbearance.

**{¶27}** "If the mortgagee finds that a default is due to circumstances beyond the mortgagor's control, as defined by the Secretary, the mortgagee may grant special forbearance relief to the mortgagor in accordance with the conditions prescribed by the Secretary."

**{¶28}** § 203.501 Loss mitigation.

**{¶29}** "Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate which can reasonably be expected to generate the smallest financial loss to the Department. Such action include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigations actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property."

**{¶30}** § 203.605 Loss mitigation performance.

**{¶31}** "(a) Duty to mitigate. Before four fully monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. * * * "

**{¶32}** § 203.614 Special forbearance.

{¶33} "If the mortgagee finds that a default is due to circumstances beyond the mortgagor's control, as defined by HUD, the mortgagee may grant special forbearance relief to the mortgagor in accordance with conditions prescribed by HUD."

{¶34} To bolster the claim that the regulations are mandatory, the borrowers cite Mortgagee Letter 00-05 issued by HUD, which states that although the bank has great latitude in selecting loss mitigation strategies, the bank's participation in the loss mitigation program is not optional and the bank must: consider all reasonable means to address a delinquency at the earliest moment; inform borrowers of available loss mitigation options and the availability of housing counseling within the second month of delinquency; evaluate each delinquent loan no later than the 90th day of delinquency to determine which loss mitigation option is appropriate; and utilize loss mitigation whenever feasible to avoid foreclosure. The letter also states that when the cause of the default is curable and the borrower is committed to remaining in the home, HUD expects lenders to consider reinstatement options in the following order: special forbearance, loan modification, and partial claim.

{¶35} The bank initially contends that non-compliance with the HUD regulations is not a defense to foreclosure as the regulations merely set forth the standards for programs in which the lender can participate in order to receive benefits from the government. The bank cites an Ohio Supreme Court case in support. *See Farmers Production Credit Assn. of Ashland v. Johnson*, 24 Ohio St.3d 69, 493 N.E.2d 946 (1986) (holding that a regulation that required the bank to "adopt" forbearance policies if the borrower is cooperative, makes an honest effort to meet conditions of loan, and is capable of working out of debt did not provide a defense to a foreclosure action).

{¶36} However, the Court's decision in *Farmers* was based upon the finding that the regulation discussed did not have the force and effect of law. Whereas, the HUD regulations at issue here are clearer in their requirements, and these requirements have been codified in detail. *See GMAC Mtge. of Pennsylvania v. Gray*, 10th Dist. No. 91AP-650 (Dec. 10, 1991). *See also CitiMortgage, Inc. v.*

*Carpenter*, 2d Dist. No. 24741, 2012-Ohio-1428, ¶ 21, 23 (stating that HUD regulations were codified and have the force and effect of law, unlike the directives at issue before that court).

**{¶37}** Even if the regulation at issue in *Farmers* is comparable to the regulations at issue here, that case is distinguishable because the contractual language in the case at bar incorporated the HUD regulations into the acceleration and foreclosure portions of the note and mortgage. *See BAC Homes Loans Serv., LP v. Taylor*, 9th Dist. No. 26423, 2013-Ohio-355, ¶ 19. As set forth above, the documents provide that acceleration and foreclosure are not authorized when not permitted by HUD regulations and that the regulations may limit the bank's right to accelerate on default.

**{¶38}** Thus, courts regularly hold that failure to comply with the HUD regulations can be used defensively in an action on a note and mortgage, *especially where they are said to apply in the contract. See id. See also CitiMortgage, Inc. v. Carpenter*, 2d Dist. No. 24741, 2012-Ohio-1428, ¶ 18-19, 21, 25; *Wells Fargo Bank, N.A. v. Favino*, N.D.Ohio No. 1:10 CV 571 (Mar. 31, 2011); *Washington Mut. Bank v. Mahaffey*, 154 Ohio App.3d 44, 2003-Ohio-4422, 796 N.E.2d 39. We conclude that noncompliance with cited HUD regulations can be utilized by the borrower in a foreclosure action where the contractual terms require such compliance, and we thus turn to the arguments raised by the borrowers in their appeal from summary judgment.

<u>FACE-TO-FACE MEETING</u>

**{¶39}** The borrowers argue that their response to the bank's motion for summary judgment sufficiently demonstrated that there is a genuine issue of material fact on the offer of a face-to-face meeting. As quoted supra, § 203.604(b) requires the bank to make a reasonable effort to engage in a face-to-face meeting with a borrower who has defaulted. The affidavit of Michele Shane states that she was never offered a face-to-face meeting.

**{¶40}** The bank had no chance to reply to the borrowers' response before summary judgment was granted, and thus the bank did not address the contention

regarding the offer of a face-to-face meeting below. On appeal, the bank states that the borrowers did not raise a genuine issue of material fact regarding this defense because the affidavit did not set forth facts showing that the exceptions to the offer of a face-to-face meeting applied.

{¶41} On this point, the remainder of § 203.604 states that a face-to-face meeting is not required under certain circumstances. For instance, a face-to-face meeting is not required if the property is not located within 200 miles of the mortgagee, its servicer, or a branch office of either or if the borrower does not live in the mortgaged property. (We note that all notices were served on the borrowers at the property, and they called it their home in their initial pleading.)

{¶42} The bank concludes that, before a genuine issue could be created, the borrowers had to show by affidavit that there existed no exceptions to regulation's requirement of a face-to-face meeting, e.g. the borrower had to state that there was a branch office within 200 miles. To the contrary, the borrowers urge that they need not negate the existence of exceptions to the requirement of a meeting in order to avoid summary judgment. The bank urges that in cases cited by appellants, the borrower did set forth a claim that a branch was located within 200 miles.

{¶43} In *Phillabaum*, the borrower responded to the bank's request for summary judgment *and filed a cross-motion for summary judgment*, stating in an affidavit that the bank has at least one branch office within 200 miles of the home and that the borrower had visited that office. The court found that this shifted the burden to the bank. *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245 (4th Dist.). The bank had responded by arguing in a memorandum that the location identified by the borrower was a regular branch office of the bank and that the regulation requires the branch within 200 miles to be a mortgage servicing location. After disagreeing with this legal interpretation of the regulation, the Fourth District alternatively stated that the bank failed to meet its burden in reply because it did not support its claim with an affidavit stating that there were no mortgage servicing personnel at the branch identified by the borrower or that the nearest

mortgage servicing center was in Maryland. *Id.* at ¶ 13-14. *See also Isaacs*, 1st Dist. No. C-100111.

{¶44} As *Phillabaum* involved a borrower's cross-motion for summary judgment, that court's statements are not dispositive as to whether a non-movant who alleges that they were not offered a face-to-face meeting must also prove that a branch is within 200 miles in order to avoid summary judgment.

{¶45} The Tenth District has placed the burden for the exceptions to the HUD regulations on the bank. *Pennsylvania v. Gray*, 10th Dist. No. 91AP-650 (Dec. 10, 1991). After stating that *the borrower met his burden by responding* to the bank's motion for summary judgment with an affidavit raising the lack of an offer of a face-to-face meeting and a failure to discuss loan modification, the Tenth District found that the bank's reply insufficiently established the 200-mile exception. *Id.* Thus, after placing the burden on the borrower to raise non-compliance with HUD regulations in his response, no further burden was placed upon the borrower to state that the exceptions are not applicable. *See id.*

{¶46} A reasonable effort to schedule a face-to-face meeting is required. There are exceptions. But, if an exception to the bank's obligation applied, the bank would have evaluated it and found it existed in deciding that it had no obligation to offer a meeting. This is especially true where one of the exceptions the bank relies upon on appeal is whether that very bank has a branch within 200 miles of the residence.

{¶47} The borrower responded to summary judgment by stating in an affidavit that they were not provided with an offer of a face-to-face meeting in any manner. This created a genuine issue as to this defensive use of the HUD regulations. The burden was not on the non-moving borrower to plead the lack of each exception in order to prove a genuine issue. Rather, once the borrower asserts that they were not offered such a meeting, we conclude that the burden is on the bank to assert which exceptions to the required meeting applied. Thus, summary judgment for the bank was improper here as the borrower demonstrated a genuine issue of material fact as to the offer of a face-to-face meeting.

## LOSS MITIGATION/LOAN MODIFICATION EFFORTS

**{¶48}** The borrowers next argue that their response to the bank's motion for summary judgment sufficiently raised a genuine issue of material fact as to the existence of proper loss mitigation efforts. The borrowers acknowledge that they have no contractual right to actually have their loan modified. They assert, however, that their contracts required the bank to comply with HUD regulations and the HUD regulations obligated the bank to properly evaluate them for loss mitigation, especially once the process was started by the bank. The borrowers rely on the allegations in the affidavit that they provided the bank with all requested documents, the foreclosure complaint was filed in the midst of the loan modification process, and the bank's only explanation was that the documents supplied were missing, have been lost, or have become outdated.

**{¶49}** The bank contends that the affidavit's statement that they were in loan modification at the time of the complaint and that documents were requested by the bank shows that the bank did in fact evaluate them for loss mitigation. However, these statements can also suggest that the bank allowed the borrowers to begin the process but never actually conducted the evaluation.

**{¶50}** The bank then contends that the borrowers did not show that the loan modification regulations would apply to them. For instance, the bank cites regulations providing that special forbearance may only be allowed if the bank finds the default was due to circumstances beyond the borrower's control. However, the affidavit of Michele Shane specifically stated that they fell behind in payments because she took a Family Medical Leave but was terminated by her employer, which required her to retain counsel in order to retain her position.

**{¶51}** Similarly, the bank posits that, in order to avoid summary judgment, the borrowers had to show that they were viable candidates for loan modification, noting that the loan could only be recast to a new term if the borrower could afford the new loan. However, this is akin to the arguments regarding the exceptions to a face-to-face meeting.

**{¶52}** That is, such claim does not fall within the burden of the non-moving borrower, especially where the borrower is claiming that the loss mitigation evaluation was never performed (as the bank kept creating ways not to conduct it) after the bank collected the requested information. *See Gray*, 10th Dist. No. 91AP-650 (finding that the borrower met *his burden* by responding to the bank's motion for summary judgment with an affidavit raising the lack of an offer of a face-to-face meeting and a failure to discuss loan modification and not placing a burden on the borrower to state that the exceptions are not applicable).

**{¶53}** If the bank started the borrowers on the path of loss mitigation but then never completed the evaluation, the homeowners would remain unaware of whether they could afford a new loan or qualify for some other loss mitigation option. We conclude that the borrower's affidavit here set forth sufficient evidence of a genuine issue of material fact regarding the failure to complete the evaluation for loss mitigation that was started by the bank.

**{¶54}** At this point, the bank argues that the borrowers' contentions regarding both the face-to-face meeting and the loss mitigation evaluation would not prohibit judgment on the note but would only apply to the ability to foreclose under the mortgage. The bank cites to § 203.606(a), which states that the bank must ensure all servicing requirements are met before initiating *foreclosure.*

**{¶55}** However, the language of the note and mortgage and the potential result of the loss mitigation evaluation belie this argument. *See* Paragraph 9 of the mortgage and Paragraph 6 of the note, quoted supra. The mortgage states, under a heading "Grounds for Acceleration of Debt," that if the borrower defaults by failing to pay a full monthly payment prior to the due date of the next payment, the "Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument[.]" The mortgage further states: "regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

{¶56} Similarly, the note states that if the borrower defaults, the "Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest." The note further states that regulations issued by the Secretary can limit the bank's "rights to require immediate payment in full in the case of payment defaults." And, it expresses, "This Note does not authorize acceleration when not permitted by HUD regulations."

{¶57} The mortgage states that the debt secured by the mortgage is evidenced by the note dated the same day and that the mortgage secures repayment of the debt evidenced by the note and the performance of the agreements under the mortgage and the note. The note similarly states that the promise to pay is secured by a mortgage dated the same day.

{¶58} Both the note and mortgage provide that it is not only the right to foreclose that will be affected by the non-compliance but also the right to accelerate and require immediate payment that will be affected. We also note that if a loss mitigation evaluation is required, then the right to accelerate (which required full payment) and then obtain a judgment based upon that acceleration would not arise until after the evaluation is complete since a successful loss mitigation can include reinstatement options, which necessarily preclude a judgment for the entire balance. Under such circumstances, when reversing summary judgment due to a genuine issue of material fact regarding compliance with HUD regulations, we shall not permit the entry of summary judgment on the note to stand.

<u>ACCELERATION LETTER</u>

{¶59} Appellants also suggest that in granting summary judgment, the trial court improperly relied upon the unauthenticated acceleration letter attached to the bank's motion for summary judgment. Appellants briefly state that because the letter was not proper summary judgment evidence and they objected to it, the letter could not be considered to determine whether the bank provided notice of acceleration.

{¶60} In ruling on a motion for summary judgment, unless the other party has failed to object, the court can only consider evidence properly submitted under Civ.R.

56, which includes pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ.R. 56(C); *State ex rel. Gilmour Realty, Inc. v. Mayfield Heights*, 122 Ohio St.3d 260, 910 N.E.2d 455, 2009-Ohio-2871, ¶ 17 (courts may consider evidence that does not comply with Civ.R. 56(C), such as unsworn and unauthenticated documents, if there is no objection). Here, the affidavit did not authenticate or even refer to the April 12, 2011 letter, and appellants objected to this fact.

{¶61} Thus, the bank does not contest the argument that the acceleration letter should not be considered. Rather, the bank contends that receipt of the notice was never placed at issue and thus the unauthenticated letter was superfluous to the motion for summary judgment. The bank points out that notice of acceleration is not required under the language of the note and mortgage and that appellants did not provide any citation as to why notice of acceleration was required and they did not assert that they did not receive it (or that it was faulty in some way that is maintained on appeal).

{¶62} The note provides that the borrower waives the right of presentment and explains that presentment means the right to require the Lender to demand payment of amounts due. The note states that the promise to pay is secured by the mortgage, and the mortgage similarly states that the debt secured by it is evidenced by a note of date the same date. The mortgage does not contain a specific requirement concerning written notice prior to acceleration or the filing of a foreclosure action. *Compare Bank of New York Mellon v. Roarty*, 7th Dist. No. 10MA42, 2012-Ohio-1471, ¶ 22, 24, 34 (where contracts specifically provided for written notice of acceleration within a certain time by a certain method and borrower raised genuine issue in response); *Federal Natl. Mtg. Assn. v. Brunner,* 6th Dist. No. L-11-1319, 2013-Ohio-128, ¶ 22; *Bank of America, N.A. v. Gray*, 5th Dist. No. 2012-CA-116, 2010-Ohio-712, ¶ 21; *National City Mtg. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, 913 N.E.2d 1007, ¶ 16, 30.

{¶63} The uncontested affidavit of the bank employee states that payments were not made as required under the terms of the note and mortgage, that default

has not been cured, and the entire balance of $99,555.94 (as of January 5, 2012) was due because the debt was "accelerated pursuant to the terms of the loan." However, the borrowers did not assert in response that they did not receive notice or under what authority it was required. Nor did they provide an affidavit regarding the notice. Rather, they argued below that the face of the notice (which they urged should not be considered in any event) provided insufficient notice of the amounts that would be due after the date of the notice. Yet, this argument is not maintained on appeal.

{¶64} We conclude that because the borrowers did not claim through summary judgment evidence (or even allege) that they did not receive the acceleration letter, a genuine issue regarding the notice of acceleration was not raised to the trial court. *Compare National City Mtge. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, 913 N.E.2d 1007, ¶ 24-27 (10th Dist.) (where borrower raised the notice issue in her response, the court analyzed that response and the bank's reply to that response to determine that the notice was not provided pursuant to the terms of the contract); *First Financial Bank v. Doellman*, 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶ 13-16, 20-21, 28 (reversing summary judgment where *borrower* raised the lack of notice in response to bank's motion, borrower's affidavit claimed that they were not provided the contractual notice, and bank's reply failed to authenticate an attached letter)

{¶65} Moreover, at both the trial and appellate levels, the borrowers failed to cite any provision of the mortgage, note, or law that requires notice of acceleration here (as they did for their other arguments). *See LaSalle Bank, N.A. v. Tirado*, 5th Dist. No. 2009CA22, 2009-Ohio-2589, ¶ 21, 31-34 (borrower cannot claim that failure to provide notice of acceleration is a violation of the law without citing appellate court to such law and where mortgage provided right to accelerate without notice and note waived right to presentment). It is the duty of appellant, not the court to scour the law to support its general assertions that notice is required under the law. *Id.* at ¶ 33. *See also* App.R. 16(A)(7) (appellants shall include in their brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error

presented for review and the reasons in support of the contention, with citations to the authorities, statutes and parts of the record on which appellant relies."). We conclude that the borrowers failed to establish that the bank's attachment had an effect on the asserted defenses maintained on appeal. In any event, the two HUD arguments presented in detail below and to this court have been sustained, requiring remand for further summary judgment proceedings.

**{¶66}** For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings.


Donofrio, J., concurs.
Waite, J., concurs.