[Cite as *Wells Fargo Bank, N.A. v. Goebel*, 2015-Ohio-38.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26244 |
| v. | : | T.C. NO. 12CV5363 |
| NICKLAS S. GOEBEL, et al. | : | (Civil appeal from Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____9th____ day of ____January____, 2015.

. . . . . . . . . .

SCOTT A. KING, Atty. Reg. No. 0037582 and JESSICA E. SALISBURY, Atty. Reg. No. 0085038, Austin Landing I, 10050 Innovation Drive, Suite 400, Miamisburg, Ohio 45342
         Attorneys for Plaintiff-Appellee

MARC E. DANN, Atty. Reg. No. 0039425 and GRACE M. DOBERDRUK, Atty. Reg. No. 0085547 and DANIEL M. SOLAR, Atty. Reg. No. 0085632, P. O. Box 6031040, Cleveland, Ohio 44103
         Attorneys for Defendants-Appellants

. . . . . . . . . .

FROELICH, P.J.

{¶ 1} Nicklas Goebel and Ashley Goebel (fka Ashley Powell) appeal from an Amended Judgment Entry and Decree of Foreclosure, granting Wells Fargo Bank judgment on a note and foreclosure on the mortgage. For the following reasons, the trial court's

judgment will be reversed and the matter will be remanded for further proceedings.

## I. Procedural History

**{¶ 2}** We summarized the background of this matter in a prior appeal, stating:

* * *  Goebel and co-defendant Ashley Powell borrowed money from Southern Ohio Mortgage, LLC, to purchase a home in Centerville, Ohio. Goebel and Powell executed a note in the amount of $147,283.  To secure repayment, they executed a mortgage against the home.  Southern Ohio Mortgage later endorsed the note in favor of Wells Fargo, which endorsed the note in blank.  Southern Ohio Mortgage also assigned the mortgage to Wells Fargo.  Thereafter, Goebel and Powell became delinquent on the note. Wells Fargo filed the present action against them in July 2012, seeking a judgment on the note and a decree of foreclosure.  In January 2013, Wells Fargo moved for summary judgment against Goebel and Powell.  Wells Fargo subsequently withdrew the motion with regard to Powell when a question arose as to whether the correct person had been served with the complaint.  The trial court then granted Wells Fargo's summary judgment motion as to Goebel.  It entered judgment against Goebel on the note and issued a decree foreclosing "the equity of redemption of any and all defendants and all persons claiming under and through them" and authorizing a sheriff's sale of the home. The ruling contained Civ.R. 54(B) certification. * * *

*Wells Fargo Bank, N.A. v. Goebel*, 2014-Ohio-472, 6 N.E.3d 1220, ¶ 3 (2d Dist.) ("*Goebel*

*I*").

**{¶ 3}** Goebel appealed the trial court's judgment, arguing that the trial court erred in entering a judgment and decree of foreclosure when Wells Fargo had not obtained a judgment against Powell. In response to this argument, we saw "no reason why the trial court could not enter judgment separately against Goebel on the note." *Id.* at ¶ 5. However, we concluded that the trial court erred in foreclosing Powell's equity of redemption and ordering a sheriff's sale of the property prior to a resolution of Wells Fargo's claims against her.

**{¶ 4}** Goebel further argued that Wells Fargo lacked standing to bring its action and that Wells Fargo failed to comply with the face-to-face interview requirement of 24 C.F.R. § 203.604, which Goebel claimed was a condition precedent to a foreclosure action. (With some exceptions, 24 C.F.R. § 203.604 requires an FHA lender to attempt an in-person meeting with the borrower before three full monthly installments due on the mortgage are unpaid.) We rejected Goebel's contention that Wells Fargo lacked standing, and we found that the failure to comply with 24 C.F.R. § 203.604 was an affirmative defense, not a condition precedent, to the action. Noting that Goebel's affidavit failed to create a genuine issue of material fact as to Well Fargo's compliance with 24 C.F.R. § 203.604, we affirmed the trial court's judgment insofar as it entered judgment against Goebel on the note and for foreclosure. We reversed the trial court's judgment to the extent that it foreclosed Powell's equity of redemption and authorized a sheriff's sale. The matter was remanded for further proceedings.

**{¶ 5}** Upon remand, Powell moved for leave to file a supplemental affidavit in

response to Wells Fargo's motion for summary judgment against her; the trial court granted the motion. Powell's supplemental affidavit concerned the face-to-face meeting requirement of 24 C.F.R. § 203.604.

{¶ 6} Wells Fargo filed a supplemental reply to its motion for summary judgment, arguing that Powell's supplemental affidavit was insufficient to create a genuine issue of material fact as to Wells Fargo's compliance with 24 C.F.R. § 203.604.

{¶ 7} On May 2, 2014, the trial court filed an Amended Judgment Entry and Decree of Foreclosure as to both Goebel and Powell. With respect to Powell, the court stated:

> The Court further finds that Defendant Ashley M. Powell filed an Answer in response to the Plaintiff's Complaint. The Court finds that the Plaintiff filed a Motion for Summary Judgment against Ashley M. Powell on July 11, 2013 which was supported by a Memorandum and Affidavit. Defendant filed her opposition to the Motion for Summary Judgment and a Supplemental Affidavit. Upon consideration thereof, the Court finds no genuine issue as to any material fact, and that the Plaintiff is entitled to a Judgment and Decree in Foreclosure as a matter of law against Defendant Ashley Powell. Accordingly, Plaintiff's Motion for Summary Judgment against Ashley Powell is hereby GRANTED.

The trial court entered judgment on the note against Goebel and Powell, foreclosed their equity of redemption, and ordered the property sold.

{¶ 8} An order of sale was filed on May 19, 2014. Goebel and Powell moved to

stay the sheriff's sale, with a request for waiver of the supersedeas bond. On May 29, 2014, the trial court granted the motion.

{¶ 9} On the same day (May 29), the trial court issued a Judgment Entry Granting Plaintiff's Motion for Summary Judgment against Defendant Ashley Powell. The trial court's judgment was nearly identical to the portions of the May 2, 2014 Amended Judgment as it related to Powell.

{¶ 10} Goebel and Powell appeal from the Amended Judgment Entry and Decree of Foreclosure, raising two assignments of error. We will address them together.

II.

{¶ 11} Goebel and Powell's assignments of error state:

THE TRIAL COURT ERRED BY ISSUING AN AMENDED JUDGMENT AND DECREE OF FORECLOSURE ON MAY 2, 2014 WHEN THE TRIAL COURT DID NOT GRANT SUMMARY JUDGMENT AGAINST APPELLANT POWELL UNTIL MAY 29, 2014.

THE TRIAL COURT ERRED BY GRANTING A JUDGMENT OF FORECLOSURE AGAINST APPELLANT ASHLEY POWELL WHEN SHE HAD AN FHA NOTE AND MORTGAGE AND MATERIAL ISSUES OF FACT REMAINED FOR TRIAL AS TO WHETHER APPELLEE WELLS FARGO COMPLIED WITH THE HUD REGULATIONS PRIOR TO FILING FOR FORECLOSURE.

{¶ 12} In their first assignment of error, Goebel and Powell claim that the trial court should not have entered its amended judgment and decree of foreclosure without first ruling

on Wells Fargo's motion for summary judgment against Powell. Contrary to their argument, the May 2, 2014 amended judgment and decree of foreclosure expressly sustained Wells Fargo's motion for summary judgment against Powell. The trial court did not err in entering judgment against Goebel and Powell in the amended judgment entry.

{¶ 13} Having previously granted summary judgment to Wells Fargo on its claims against Powell and entered an amended judgment and decree of foreclosure, it is unclear why the trial court filed a separate entry on May 29, 2014, granting Wells Fargo's summary judgment motion as to Powell. The May 29, 2014 entry is superfluous.

{¶ 14} Goebel and Powell's first assignment of error is overruled.

{¶ 15} The second assignment of error asserts that the trial court erred in granting summary judgment to Wells Fargo against Powell. Powell argues that genuine issues of material fact exist as to whether Wells Fargo complied with the face-to-face meeting requirement of 24 C.F.R. § 203.604.

{¶ 16} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt*,

75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293, 662 N.E.2d 264; Civ.R. 56(C).

{¶ 17} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 18} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted deference by the reviewing appellate court. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.).

{¶ 19} We commented in *Goebel I* that Wells Fargo had filed identical summary judgment motions against Goebel and Powell, and we noted that "[i]f Wells Fargo obtains summary judgment against Powell, as it did against Goebel, the

affirmative-defense-versus-condition-precedent issue with regard to 24 C.F.R. § 203.604 likely will be before us once again." *Goebel*, 2014-Ohio-472, 6 N.E.3d 1220, ¶ 14, fn.1. We held in *Goebel I* that an alleged failure to comply with 24 C.F.R. § 203.604 was an affirmative defense, for which Goebel had the burden of proof. Powell likewise bears the burden of proof on that issue.

{¶ 20} 24 C.F.R. § 203.604 provides, in relevant part:

(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced * * *.

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

(d)   A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched.   Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

**{¶ 21}**   In affirming the trial court's grant of summary judgment to Wells Fargo as to Goebel, we concluded that Goebel had failed to create a genuine issue of material fact as to Wells Fargo's compliance with 24 C.F.R. § 203.604.   We reasoned:

In an affidavit opposing summary judgment, Goebel averred "[u]pon information and belief" that Wells Fargo had a branch office within 200 miles of his home.   (Doc. # 43).   He also averred that he "d[id] not recall" having a face-to-face meeting with anyone from Wells Fargo.   (*Id.*).   Averments made "upon information and belief" are not indicative of personal knowledge and are insufficient to create a genuine issue of material fact.   *Insurance Co. of North America v. Mall Builders, Inc.,* 2d Dist. Montgomery No. 7756, 1982 WL 3840 (Oct. 28, 1982); *State ex rel. Anderson v. Obetz,* 10th Dist. Franklin No. 06AP-1030, 2008-Ohio-4064, ¶ 18.   Similarly, an averment denying an ability to remember the occurrence of an event is insufficient to create a genuine issue of material fact as to whether the event occurred.

*Discover Bank v. Combs,* 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 20; *State ex rel. Mike v. Warden, Trumbull Correctional Inst.,* 11th Dist. Trumbull No. 2002-T-0153, 2003-Ohio-2237, ¶ 10-12.

*Goebel I* at ¶ 19.

**{¶ 22}** Powell's supplemental affidavit stated that she has personal knowledge of the facts contained in her affidavit, that she owns the real property at issue, and that the property is her primary residence. Powell acknowledged that she signed a mortgage with Southern Ohio Mortgage, LLC, which is the subject of this foreclosure action; the mortgage is an FHA mortgage. Powell further stated:

7.) Upon information and belief, there is a Wells Fargo Home Mortgage branch (the "WFHM Branch") located at 82 N. Main St., Dayton, OH 45402. Please see the results of a yellowpages.com search performed on March 12, 2014, providing information for said location attached as *Defendant's Exhibit 1-A*.

8.) The WFHM Branch is located approximately six (6) miles from the property. Please see the result of a google.com/maps search performed on March 12, 2014, providing such information attached as *Defendant's Exhibit 1-B*.

9.) Upon information and belief, there is a Wells Fargo Bank branch (the "WFB Branch") located at 115 Hospital Dr., Van Wert, OH 45891. Please see the results of a search performed on wellsfargo.com on March 12, 2014, providing the information for said location attached as *Defendant's Exhibit*

*1-C.*

10.) The WFB Branch is located approximately one hundred ten (110) miles from the property. Please see the results of a google.com/maps search performed on March 12, 2014, providing such information attached as *Defendant's Exhibit 1-D*.

11.) Upon information and belief, the WFHM Branch and the WFB Branch were operating in their current locations at and around the time of February 1, 2012 through June 1, 2012.

12.) [summary of 24 C.F.R. § 203.604 requirement]

13.) I did not have such a face-to-face interview with Wells Fargo.

14.) At no point in time did I clearly indicate to Wells Fargo that I would not cooperate in such a face-to-face interview.

15.) To the best of my information and knowledge, Wells Fargo did not make a trip to the Property to attempt to schedule a face-to-face interview.

16.) To the best of my information and knowledge, Wells Fargo did not send a certified letter to the Property to attempt to schedule a face-to-face interview.

{¶ 23} Wells Fargo argues that Powell's supplemental affidavit is insufficient to create a genuine issue of material as to its compliance with 24 C.F.R. § 203.604, because she failed to establish that the face-to-face meeting requirement applied. Wells Fargo argues that Powell did not establish that there was a Wells Fargo branch within 200 miles of the property, that the branches were staffed with employees who were trained in loss mitigation

techniques and could conduct a review of her loan, and that Powell failed to present evidence that none of the exceptions to the face-to-face meeting requirement applied.

**{¶ 24}** While we have stated that Powell bears the burden of establishing that Wells Fargo failed to comply with the face-to-face meeting requirement, that burden does not include establishing that none of the exceptions to the face-to-face meeting requirement applies. In this regard, we find *Wells Fargo Bank, N.A. v. Aey*, 7th Dist. Mahoning No. 12 MA 178, 2013-Ohio-5381, to be persuasive.

**{¶ 25}** Discussing whether noncompliance with HUD regulations is a defense to foreclosure, the Seventh District noted that "courts regularly hold that failure to comply with the HUD regulations can be used defensively in an action on a note and mortgage, especially where they are said to apply in the contract." *Aey* at ¶ 38. It similarly concluded that "noncompliance with cited HUD regulations can be utilized by the borrower in a foreclosure action where the contractual terms require such compliance."[1] *Id.*

**{¶ 26}** Turning to the face-to-face meeting requirement, the Seventh District rejected Wells Fargo's contention that the borrowers did not raise a genuine issue of material fact as to noncompliance with 24 C.F.R. § 203.604(b) because the borrower's affidavit did not set forth facts showing that the exceptions to the offer of a face-to-face meeting applied. The Seventh District reasoned:

A reasonable effort to schedule a face-to-face meeting is required.

---

[1] The Seventh District has since expressly held that compliance with HUD regulations is a condition precedent to foreclosure, subject to the pleading requirements of Civ.R. 9(C). *PNC Mtge. v. Garland*, 7th Dist. Mahoning No. 12 MA 222, 2014-Ohio-1173, ¶ 31. In so holding, the Seventh District noted that its conclusion in *Garland* is contrary to our holding in *Goebel I* on this issue.

There are exceptions. But, if an exception to the bank's obligation applied, the bank would have evaluated it and found it existed in deciding that it had no obligation to offer a meeting. This is especially true where one of the exceptions the bank relies upon on appeal is whether that very bank has a branch within 200 miles of the residence.

The borrower responded to summary judgment by stating in an affidavit that they were not provided with an offer of a face-to-face meeting in any manner. This created a genuine issue as to this defensive use of the HUD regulations. The burden was not on the non-moving borrower to plead the lack of each exception in order to prove a genuine issue. Rather, once the borrower asserts that they were not offered such a meeting, we conclude that the burden is on the bank to assert which exceptions to the required meeting applied. Thus, summary judgment for the bank was improper here as the borrower demonstrated a genuine issue of material fact as to the offer of a face-to-face meeting.

*Aey* at ¶ 46-47.

**{¶ 27}** In reaching this conclusion, the Seventh District relied upon Tenth District authority which "placed the burden for the exceptions to the HUD regulations on the bank." *Aey* at ¶ 45, citing *GMAC Mtge. of Penn. v. Gray*, 10th Dist. Franklin No. 91AP-650, 1991 WL 268742 (Dec. 10, 1991). The Seventh District noted a similar ruling by the Fourth District in *Wells Fargo v. Phillabaum*, 192 Ohio App.3d 712, 2011-Ohio-1311, 950 N.E.2d 245 (4th Dist.), although it found that *Phillabaum* was not dispositive, because the borrower

in *Phillabaum* had filed a cross-motion for summary judgment.   *Aey* at ¶ 43-44.

{¶ 28}   Unlike Goebel, who stated that he did not recall having a face-to-face meeting with anyone from Wells Fargo, Powell stated in her affidavit that she "did not have such a face-to-face interview with Wells Fargo."   Powell presented sufficient evidence to raise a genuine issue of material fact as to whether Wells Fargo complied with the requirement to have a face-to-face meeting with her.

{¶ 29}   Wells Fargo claims that, even if there were a genuine issue of material fact regarding whether there was a face-to-face meeting, Powell was also required to create a genuine issue of material fact regarding whether Wells Fargo made a reasonable effort to arrange such a meeting, which it asserts is an alternative to the face-to-face meeting requirement.   We disagree.

{¶ 30}   As stated above, 24 C.F.R. § 203.604(b) requires the lender to have "a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting * * *."    The requirement of a face-to-face meeting

> is intended to emphasize the importance of face-to-face visits in reducing the incidence of foreclosure.  A meeting with the mortgagor by a mortgagee employee can often determine the cause of the default, obtain financial information; establish a repayment schedule and prevent foreclosure by influencing the payment habits of mortgagors.

 http://portal.hud.gov/hudportal/documents/huddoc?id=43301c7HSGH.pdf  (accessed  Dec. 30, 2014).   A face-to-face meeting need not be held if certain conditions exist (24 C.F.R. § 203.604(c)(1)-(4)) or if a "reasonable effort to arrange a meeting is unsuccessful."   24

C.F.R. § 203.604(c)(5). We read 24 C.F.R. § 203.604(b) and (c) to mean that the mortgagee must have a face-to-face meeting with the mortgagor, but the mortgagee is excused from that obligation under certain conditions or if the mortgagee made reasonable efforts to arrange the meeting, but those efforts were unsuccessful. We conclude that Powell's statement that no face-to-face meeting occurred was sufficient to shift the burden to Wells Fargo to establish a genuine issue of material fact that an exception to the face-to-face meeting requirement existed, including that Wells Fargo made a reasonable effort to arrange a meeting, but that their efforts were unsuccessful.

{¶ 31} Powell made averments in her affidavit and/or presented documentary evidence concerning the applicability of several of the exceptions; she stated that she resides in the mortgage property (24 C.F.R. § 203.604(c)(1)), that the mortgage property was within 200 miles of the mortgagee, its servicer, or a branch office of either (24 C.F.R. § 203.604(c)(2)), and that she never indicated that she would not cooperate in a face-to-face interview (24 C.F.R. § 203.604(c)(3)). Powell attempted to address whether Wells Fargo had made a reasonable effort to arrange a meeting by stating "[t]o the best of my information and knowledge" that the bank had not sent a certified letter or come to the property. None of Powell's averments regarding 24 C.F.R. § 203.604(c) was necessary to create a genuine issue of material fact as to Wells Fargo's compliance with the face-to-face meeting requirement.

{¶ 32} Wells Fargo cites no evidence that any of the exceptions to the face-to-face meeting is applicable. A genuine issue of material fact thus remains as to whether Wells Fargo complied with the HUD face-to-face meeting requirement.

**{¶ 33}** Wells Fargo asserts that, even if a genuine issue of material fact exists as to its compliance with 24 C.F.R. § 203.604(b), the trial court was permitted to grant summary judgment on the note, which the bank claims was not subject to the HUD regulations. Wells Fargo emphasizes that the relevant HUD regulations, particularly 24 C.F.R. § 203.604, address foreclosure only, not acceleration of the underlying debt.

**{¶ 34}** Paragraph 6(B) of the note addresses default due to the borrowers' failure to pay. It provides:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

Paragraph 9 of the open-end mortgage also addresses grounds for acceleration of the debt. It states, in part:

> **(a) Default**. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults require immediate payment in full of all sums secured by this Security Instrument. * * *

* * *

**(d) Regulations of HUD Secretary**. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

{¶ 35} Interpreting identical language in a note and mortgage, other appellate districts have interpreted these documents to mean that "acceleration *and* foreclosure are not authorized when not permitted by HUD regulations and that the regulations may limit the bank's right to accelerate on default." (Emphasis added.) *Aey*, 7th Dist. Mahoning No. 12 MA 178, 2013-Ohio-5381, at ¶ 37. As stated by the Ninth District:

The note and mortgage at issue in this case unambiguously provide that the rights of the lender in the case of default by the borrower are "limited by regulations of the Secretary [of Housing and Urban Development or his or her designee] * * *." Those regulations include 24 C.F.R. 203.604, which requires a face-to-face interview with the mortgagor prior to initiating a foreclosure action. BAC [the mortgagee] has not argued that it satisfied the regulation or that some exception applied in this situation. * * * In this case, the mortgagee and the mortgagor agreed to limit the mortgagee's rights to accelerate and foreclose based on applicable HUD regulations. Thus, by contract, BAC Home Loans was required to comply with the HUD regulations governing acceleration and foreclosure, and the [borrowers] were

entitled to use any failure to do so as a shield in the subsequent foreclosure case.

*BAC Home Loans Servicing, LP v. Taylor*, 2013-Ohio-355, 986 N.E.2d 1028, ¶ 19 (9th Dist.).   See also *HSBC Bank USA, Natl. Trust Co. v. Teagarden*, 2013-Ohio-5816, 6 N.E.3d 678, ¶ 63 (11th Dist.) ("Although the HUD regulations properly limit the lender's right to foreclose the mortgage, here, they are expressly incorporated as a limit on the lender's right to accelerate the note.").   We find the authority of our sister districts to be persuasive.

{¶ 36}   The trial court erred in granting summary judgment to Wells Fargo on its monetary and foreclosure claims against Powell.   Powell's second assignment of error is sustained.

### III.   Conclusion

{¶ 37}   The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurs in judgment only.

Copies mailed to:

Scott A. King
Jessica E. Salisbury
Marc E. Dann
Grace M. Doberdruk
Daniel M. Solar
Hon. Timothy N. O'Connell