BANKERS LIFE COMPANY, Plaintiff-Appellee, *v.* JAMES D. DENTON *et al.*, Defendants-Appellants (Midlothian State Bank, Trustee, *et al.*, Defendants-Appellees).

Third District   No. 3—83—0275

Opinion filed December 29, 1983.

Brian J. Moore, of Frankfort, and David K. Igasaki, of Will County Legal Assistance Program, Inc., of Joliet, and William L. Eaton, law student, for appellants.

George J. Vosicky and Thomas Feehan, both of Thomas, Wallace, Feehan, Baron and Kaplan, Ltd., of Joliet, for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This action was brought to foreclose a mortgage insured by the United States Department of Housing and Urban Development (H.U.D.). The circuit court of Will County entered judgment in favor of the plaintiff, Bankers Life Company, after striking the first and second affirmative defenses of the defendants, James and Karen Denton.

On December 21, 1981, the plaintiff filed a complaint seeking to foreclose a mortgage given by the defendants to secure a note in the

face amount of $27,850. The plaintiff alleged that the defendants had failed to make any payments on the loan since February 1, 1981.

The defendants raised two affirmative defenses to the complaint in their answer. The first affirmative defense alleged the plaintiff's failure to comply with the mortgage servicing requirements contained in 24 C.F.R. sections 203.604 and 203.606, namely, to obtain a face-to-face interview with the defendants before three loan installments had become past due, to seek that face-to-face interview through a certified mail request and a trip to visit the defendants at the mortgaged property, and to review its file to determine compliance with the appropriate servicing requirements.

The second affirmative defense alleged the plaintiff's failure to seek an assignment of the mortgage to H.U.D., indicating that the defendants had met all the requirements for a mandatory assignment as set forth in 24 C.F.R. section 203.650.

The plaintiff, thereafter, moved to strike the affirmative defenses from the answer. The trial court granted that motion and subsequently entered a judgment of foreclosure and sale against the defendants.

The issue which has been presented for our review by the defendants is whether a mortgagor can raise as an affirmative defense to a mortgage foreclosure action involving a mortgage insured by H.U.D., the failure of the mortgagee to comply with certain H.U.D. mortgage servicing requirements contained in the Code of Federal Regulations.

■ A motion to strike admits all facts well pleaded. (*Sierens v. Clausen* (1975), 60 Ill. 2d 585, 328 N.E.2d 559.) Thus, for the purpose of determining whether the trial court properly granted the plaintiff's motion to strike, all well-pleaded facts in the affirmative defenses will be taken as true.

The primary cases the defendants cited in support of their contention that the affirmative defenses were improperly striken by the trial court are *Thorpe v. Housing Authority* (1969), 393 U.S. 268, 21 L. Ed. 2d 474, 89 S. Ct. 518, *Chicago Housing Authority v. Harris* (1971), 49 Ill. 2d 274, 275 N.E.2d 353, and *Federal National Mortgage Association v. Bryant* (1978), 62 Ill. App. 3d 25, 378 N.E.2d 333. The defendants argue these cases are authority for the claim that H.U.D. expressly requires compliance with the mortgage servicing requirements contained in the Code of Federal Regulations prior to the commencement of mortgage foreclosure proceedings by virtue of the mandatory language contained in such regulations.

*Thorpe v. Housing Authority* (1969), 393 U.S. 268, 21 L. Ed. 2d 474, 89 S. Ct. 518, involved a H.U.D. circular which stated that be-

fore instituting eviction proceedings, local housing authorities operating federally assisted projects should inform the tenant of the reasons for eviction, giving him an opportunity to make a reply or explanation. The United States Supreme Court found that the circular's notification procedure furthered the goals of the Federal housing acts and had been properly imposed upon local housing authorities under H.U.D.'s wholly independent rule-making power. The court viewed the circular's language to be mandatory and held that housing authorities of federally assisted public housing projects must apply the requirements of the circular before eviction proceedings could be commended.

In *Chicago Housing Authority v. Harris* (1971), 49 Ill. 2d 274, 275 N.E.2d 353, the Illinois Supreme Court held that a tenant in a federally assisted public housing project whose lease is subject to termination because of undesirability must be given an administrative hearing upon request in accordance with a grievance procedure set forth in a H.U.D. circular. Again, the court deemed the circular's requirements to be mandatory and part of H.U.D.'s general rule-making authority.

The foreclosure of a H.U.D. insured mortgage was the subject of *Federal National Mortgage Association v. Bryant* (1978), 62 Ill. App. 3d 25, 378 N.E.2d 333. The decision of the court that foreclosure was inappropriate was based upon State statutory and case law and H.U.D. regulations allowing the cure of a default to preclude a foreclosure proceeding.

The language contained in the H.U.D. mortgage servicing requirements cited by the defendants in their affirmative defenses is mandatory and expressly requires compliance. These requirements also have the force and effect of law, having been adopted as regulations pursuant to the authority conferred on H.U.D. by the United States Congress in 12 U.S.C. sections 1709(a), 1709(b)(1), 1715(b), 1715(u) (1982); and 42 U.S.C. section 3535(d) (1976).

24 C.F.R. section 203.500, entitled "Mortgage servicing generally," states that it is H.U.D.'s intent that no mortgagee commence foreclosure or acquisition of the property until the requirements of sections 203.650 thru 203.662 have been complied with. 24 C.F.R. section 203.650 is entitled "Assignment of mortgages" and was the subject of the defendants' second affirmative defense.

24 C.F.R. section 203.604, entitled "Contact with the mortgagor," states that the mortgagee must have a face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting before three full monthly mortgage installments are unpaid. Other pro-

visions throughout this section utilize the word "shall" in further describing its requirements.

24 C.F.R. section 203.606, entitled "Pre-foreclosure review," indicates that the mortgagee shall review its file relating to the servicing of a mortgage before initiating foreclosure in order to assure itself that the case has been handled in accordance with the H.U.D. mortgage servicing requirements. Sections 203.604 and 203.606 were the subject of the defendants' first affirmative defense.

■ It is evident from the language of the servicing regulations that the mortgagee must comply with these provisions prior to the commencement of a foreclosure proceeding. Therefore, in accordance with the reasoning set forth in *Thorpe, Harris* and *Bryant,* we believe that the failure to comply with these servicing regulations which are mandatory and have the force and effect of law can be raised in a foreclosure proceeding as an affirmative defense.

While it is true that 24 C.F.R. section 203.500 provides that a pattern of refusal or failure to comply with the servicing requirements will be cause for withdrawal of a mortgagee's approval to participate in the Federal mortgage insurance program, we do not believe this to be an adequate remedy for the individual mortgagor. The legislative purpose of the National Housing Act set forth in 12 U.S.C. section 1701(t), is to assist in providing a decent home and a suitable living environment for every American family. Thus, the primary beneficiaries of the act and its implementing regulations are those receiving assistance through its various housing programs. This would include the defendants as mortgagors of a H.U.D. insured mortgage.

Therefore, in order to effectively insure that the interests of the primary beneficiaries of the H.U.D. mortgage servicing requirements are being protected, mortgagors must be allowed to raise noncompliance with the servicing requirements as a defense to a foreclosure action. H.U.D.'s withdrawal of a mortgagee's approval to participate in the mortgage insurance program after repeated violations of the servicing requirements is a useless remedy for the individual faced with the immediate problem of the foreclosure action; an action which could possibly be avoided by either assignment of the mortgage to H.U.D. or further efforts to arrange a revised payment plan.

In addition, it is specifically stated in 24 C.F.R. section 203.500 that H.U.D. takes no position as to whether a mortgagee's refusal or failure to comply with sections 203.650 thru 203.662 is a legal defense to a foreclosure action, leaving the matter to be determined by the courts. Nothing is stated in this respect with reference to sections 203.604 and 203.606. H.U.D. is, therefore, taking a neutral position

which has no effect on our determination of this issue.

The plaintiff's major contention in opposition to the defendants' position is that the defendants' affirmative defenses are in essence implied remedies and, thus, must meet the requirements of *Cort v. Ash* (1975), 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080, regarding the implication of a private cause of action from statutory provisions which do not expressly provide for such an action. In *Cort*, the United States Supreme Court held that a private cause of action by a corporate stockholder for derivative damage relief could not be maintained under the terms of a criminal statute prohibiting corporations from making contributions or expenditures in connection with Federal elections.

We do not believe that the requirements of *Cort* are applicable to the instant case. *Cort* dealt with the implication of a private cause of action involving the substantive rights of a corporate shareholder. Here we have procedural requirements presented by way of affirmative defenses, namely, the prerequisites to filing a foreclosure action involving a federally insured mortgage. The defendants are not requesting the court to fashion a remedy or award money damages. The defendants are merely asking the court by the assertion of their affirmative defenses to bar the foreclosure action so that the mortgagee can comply with the H.U.D. mortgage servicing requirements.

As additional support for its position, the plaintiff has cited *Roberts v. Cameron-Brown Co.* (5th Cir. 1977), 556 F.2d 356. In that case, a mortgagor of a federally insured mortgage brought an action against the Federal National Mortgage Association and a private mortgagee for injunctive relief to prevent a foreclosure action. One of the issues presented to the court was whether a private cause of action could be implied to allow the mortgagor to assert as a defense to the foreclosure action that the mortgagee had failed to comply with the mortgage servicing guidelines which were contained at that time in the H.U.D. Handbook and were not a part of the Code of Federal Regulations. The court applied the *Cort* analysis in rejecting the implication of a private cause of action, stating that the Handbook dealt only with the relationship between the government and the mortgagee and that H.U.D. never intended the mortgagor to be a third-party beneficiary of the policy guidelines set forth in the Handbook. The court also stated that H.U.D. had chosen not to publish the Handbook, thus, prohibiting it from having the force and effect of law.

Since *Roberts* was decided, the mortgage servicing requirements contained in the Handbook have been published in the Federal Register and the Code of Federal Regulations, giving them the force and

effect of law. Because of this fact, the precedential value of the *Roberts* case has been considerably lessened. Furthermore, *Roberts* dealt with the implication of a private cause of action and not with the assertion of an affirmative defense. The *Cort* analysis has always been applied in the context of an implied cause of action, not an affirmative defense. Therefore, we believe that the holding in *Roberts* is not controlling in the case at hand.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Will County is reversed and the case is remanded for further proceedings consistent with the opinions expressed herein.

Reversed and remanded.

ALLOY and HEIPLE, JJ., concur.