[Cite as *CitiMortgage, Inc. v. Carpenter* , 2012-Ohio-1428.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| CITIMORTGAGE, INC. | : | |
| | : | Appellate Case No. 24741 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 10-CV-6549 |
| v. | : | |
| | : | |
| SHIRLEY J. CARPENTER | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of March, 2012.

. . . . . . . . . . .

THOMAS L. HENDERSON, Atty. Reg. #0039789, Lerner, Sampson & Rothfuss, LPA, Post Office Box 5480, Cincinnati, Ohio 45201-5480
    Attorney for Plaintiff-Appellee, CitiMortgage, Inc.

GEORGE PATRICOFF, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Defendant-Appellee, Montgomery County Treasurer

ANDREW D. NEUHAUSER, Atty. Reg. #0082799, Advocates for Basic Legal Equality, Inc., 525 Jefferson Avenue, Toledo, Ohio 43604
and
LAUREN E. DRESHMAN, Atty. Reg. #0085028, Advocates for Basic Legal Equality, Inc., 333 West First Street, Suite 400-B, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant, Shirley J. Carpenter

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Shirley J. Carpenter appeals from a judgment of foreclosure rendered in favor of plaintiff-appellee CitiMortgage, Inc. Carpenter first contends that a genuine issue of material fact exists regarding whether CitiMortgage provided a proper non-approval notice under the federal Home Affordable Modification Program (HAMP) before filing its foreclosure action. Carpenter argues that CitiMortgage's failure to follow Freddie Mac Bulletin 2009-28 and the Department of the Treasury's Supplemental Directive 09-08 is an affirmative defense to foreclosure.

{¶ 2} We conclude that Carpenter has failed to establish that an affirmative defense existed under HAMP. Specifically, she failed to present evidence that she was an intended third-party beneficiary to the servicing contract between CitiMortgage and Freddie Mac. She also failed to present evidence that the contract terms between CitiMortgage and Freddie Mac were expressly incorporated into her mortgage and note. Finally, although the terms of Freddie Mac Bulletin 2009-28 and the Treasury's Supplemental Directive 09-08 are mandatory in nature, these terms do not carry the force and effect of law. Therefore, Carpenter had no affirmative defense to foreclosure, rendering the validity of CitiMortgage's non-approval notice immaterial. Accordingly, the judgment of the trial court is Affirmed.

## I. Course of Proceedings

{¶ 3} CitiMortgage is the holder of a note and mortgage executed by Carpenter in 2005, when she refinanced her mortgage in order to pay some bills. In December 2009, Carpenter contacted CitiMortgage to look into whether she could

modify the terms of her loan. A CitiMortgage employee told Carpenter that she was approved for a non-HAMP

loan modification, but Carpenter never received any loan modification paperwork from CitiMortgage.

{¶ 4} Carpenter continued to make her monthly mortgage payments between January, 2010 and March 2010. She did not make her April 2010 or May 2010 installments, but did make her June 2010 payment. In a letter dated June 30, 2010, Carpenter was notified by CitiMortgage that she had defaulted under the terms of the Note and Mortgage. The parties were asked at oral argument whether Carpenter had been evaluated under HAMP; neither party appeared to dispute that she was evaluated. Furthermore, a letter from CitiMortgage dated July 8, 2010, sent to Carpenter informing her that a loan modification under HAMP was denied, implies that an evaluation under HAMP was completed. The letter states that the reason for denial is, "because you

are current on your mortgage loan and * * * you are not at risk of default because: You have not documented a financial hardship that has reduced your income or increased your expenses, thereby impacting your ability to pay your mortgage as agreed." Exhibit 3, p. 1.

{¶ 5} Upon Carpenter's failure to cure the default, CitiMortgage accelerated the loan and commenced a foreclosure action against Carpenter. The trial court rendered summary judgment in favor of CitiMortgage in the amount of $37,690.12, plus interest from April 1, 2010.

{¶ 6} Carpenter appeals from the summary judgment rendered against her.

## II. Carpenter Has No Affirmative Defense to Foreclosure
## on Her Mortgage Loan Based on CitiMortgage's Alleged Failure
## to Have Complied with HAMP Requirements

{¶ 7} Carpenter's sole assignment of error is as follows:

"THE TRIAL COURT ERRED IN GRANTING CITIMORTGAGE'S MOTION FOR SUMMARY JUDGMENT."

{¶ 8} Carpenter contends that CitiMortgage's failure to follow the Department of the Treasury's (Treasury) HAMP Supplemental Directives and Freddie Mac HAMP-related Bulletins constitutes an affirmative defense. She contends that there is a genuine issue of material fact regarding whether CitiMortgage failed to follow notice procedures outlined in the Treasury's Supplemental Directive 09-08 and Freddie Mac Bulletin 2009-28.

{¶ 9} A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist. 1999). "We review summary judgment decisions de novo, which means that we apply the same standard as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d

127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). In other words, "we review the judgment independently and without deference to the trial court's determination." *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist. 1993).

{¶ 10} Congress passed the Emergency Economic Stabilization Act (EESA), 12 U.S.C. 5201, et seq., in response to the downward turn of the financial market and credit crisis in 2008. A major component of the statute, the Trouble Asset Relief Program (TARP), authorized the Secretary of the Department of Treasury (Treasury) to undertake foreclosure mitigation initiatives and preserve home ownership. 12 U.S.C. 5211-5241. Specifically, TARP required the Secretary to "implement a plan that seeks to maximize assistance for homeowners and * * * encourage[s] the servicers of the underlying mortgages * * * to take advantage of * * * other available programs to minimize foreclosures." 12 U.S.C. 5219(a)(1). Additionally, "the Secretary may use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." *Id.*

{¶ 11} The authority granted to the Treasury under EESA to implement foreclosure mitigation efforts is broad. "Notably, Congress did not require that the Treasury's plan benefit any identified category of borrowers of loans, or that the plan utilize any specific form of assistance." *Nguyen v. BAC Home Loan Servs., LP*, N.D. Cal No. C-10-01712, 2010 WL 3894986, *1 (Oct. 1, 2010). The Treasury has "full discretion to structure foreclosure mitigation initiatives, including their size, duration, and scope." *Id.*

**{¶ 12}** Pursuant to its broad discretionary authority, the Treasury introduced the Making Homes Affordable Program, which included the Home Affordable Modification Program (HAMP). "HAMP was aimed at helping homeowners who were in or were at immediate risk of being in default on their home loans by reducing monthly payments to sustainable levels." *Costigan v. Citimortgage, Inc.* S.D. NY No. 10 Civ 8776, 2011 WL 3370397, *1 (Aug. 2, 2011). " * * * HAMP works by providing financial incentives to participating mortgage servicers to modify terms of eligible loans." Marks v. Bank of America, N.A. D. Ariz. No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, *5 (June 22, 2010).

**{¶ 13}** Participants in HAMP include servicers with loans guaranteed by Government Sponsored Enterprises (GSE), such as Fannie Mae and Freddie Mac, as well as loans that are not guaranteed, known as non-GSE loans. *See Markle v. HSBC Mortgage Corp. (USA)*, ___ F.Supp.2d___, D. Mass No. 10-40189, 2011 WL 6944911, *1 (July 12, 2011). "The Department of the Treasury and Fannie Mae have issued a series of directives that provide guidance to mortgage servicers implementing HAMP." *Id.* at *2. Servicers who enter into a contract with Fannie Mae and have their loans guaranteed by Fannie Mae are required to participate in HAMP and to abide by Fannie Mae servicing guides and bulletins, which are expressly incorporated into the contact. *Id.* at *1. We see no reason why the same principle would not apply to servicers who enter into similar GSE servicing agreements with Freddie Mac. *See* Freddie Mac, *Bulletin Number: 2009-6*, http://www.freddiemac.com/sell/guide/bulletins/pdf/bll096.pdf, 1 (accessed Feb 16,

2012). Non-GSE servicers who opt into participating in HAMP by signing a Servicer Participation Agreement (SPA) are also required to evaluate borrowers for HAMP eligibility and must abide by Treasury's handbooks and directives. *Markle* at *1; *Edwards v. Aurora Loan Serv.'s, LLC*, 791 F.Supp.2d 144, 147 (D.D.C. 2011). Although these guidelines from both the Treasury and Freddie Mac require servicers to evaluate borrowers prior to initiating a foreclosure proceeding, that does not necessarily mean that a loan modification will result. *See BAC Home Loans Servicing v. Bates*, Butler C.P. No. CV 2009062801, 5-7 (Mar. 8, 2010); *U.S. Bank, N.A. v. Bleckinger*, Seneca C.P. No. 10-CV-0095, 6 (Oct. 13, 2010); U.S. Dept. of the Treasury, *Supplemental Directive 09-01*, https://www.hmpadmin.com/ portal/programs/docs/hamp_servicer/sd0901.pdf (accessed Feb. 16, 2012)(governing non-GSE loan servicers); Freddie Mac, *Chapter C65: Home Affordable Modification Program*, http://www.freddiemac.com/sell/guide/ bulletins/pdf/bll096xA.pdf, (accessed Feb 16, 2012)(governing Freddie Mac guaranteed loans).

### A. Carpenter Is Not a Third-Party Beneficiary To The Contract; No Affirmative Defense Exists.

{¶ 14} Regardless of whether a servicer is the holder of a GSE loan or a non-GSE loan, most courts have found that borrowers do not have standing to enforce the terms of HAMP as third-party beneficiaries. *See, e.g., Edwards* at 152-153 (regarding a GSE loan contract); *Markle* at *2-7 (regarding a GSE loan contract); *Marks,* D. Ariz. No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, *5-7

(regarding a non-GSE loan SPA); *Warren v. U.S. Bank of America*, S.D. Ga No. 4:11-cv-70, 2011 WL 2116407, *2-5 (May 24, 2011) (no standing to enforce HAMP terms of a non-GSE loan SPA).   Turning to  Ohio law, specifically:  "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio."  *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991).

{¶ 15} An affirmative defense, like a cause of action, is a claim of right.  In a cause of action, the claim of right is a claim to relief; in an affirmative defense, the claim of right is the avoidance of liability under another's claim to relief.  It follows then, that a party seeking to assert an affirmative defense under a contract must either be a party to the contract or an intended third-party beneficiary of a contact. In the HAMP context, a New York court concluded that, "an alleged breach of the [HAMP Service Provider] Agreement cannot form the basis of a defense, because [the borrower] cannot be considered an intended beneficiary of the Agreement, as there is neither evidence nor allegation that it was [the bank's] intention to benefit homeowners in entering into the Agreement."  *Wells Fargo Bank v. Small*, 2010 NY Slip Op 30424U, *5, 2010 NY Misc. LEXIS 2478 (N.Y. Sup. Ct. Feb. 16, 2010).

{¶ 16} Carpenter contends that there is a genuine issue of material fact whether the evaluation she received conformed with Freddie Mac Bulletin 2009-28 and the Treasury's Supplemental Directive 09-08.  But that issue of fact can only be material if Carpenter had an affirmative defense to this foreclosure action based on CitiMortgage's alleged non-conformity.  Carpenter does not contend that she is an

intended third-party beneficiary to the contract between Citimortgage and Freddie Mac. Carpenter asserts that she has an affirmative defense, even though she is not a beneficiary to the servicer contract, due to "CitiMortgage's failure to follow Freddie Mac Bulletin [20]09-28 and HAMP Supplemental Directive 09-08." We disagree. In order for Carpenter to have an affirmative defense based upon the contract terms between CitiMortgage and Freddie Mac – terms incorporating Freddie Mac Bulletins and Treasury Supplemental Directives – Carpenter had to have presented evidence establishing a genuine issue of material fact as to her status as an intended third-party beneficiary to the servicer contract. She did not present any evidence of that. Therefore, Carpenter has no standing to assert an affirmative defense on her loan contract, and CitiMortgage is entitled to judgment as a matter of law.

**B.   If Carpenter Is Not an Intended Third-Party Beneficiary to a Contract,**

**Is an Affirmative Defense Nevertheless Available to Her under HAMP?**

**1. The Terms of the CitiMortgage/Freddie Mac Servicing Contract**

**Were Not Expressly Incorporated into Carpenter's Mortgage or Note,**

**Therefore No Affirmative Defense Exists.**

**{¶ 17}** Even without being an intended third-party beneficiary of the servicer contract between CitiMortgate and Freddie Mac, Carpenter would be entitled to an affirmative defense based upon CitiMortgage's failure to have complied with HAMP servicing requirements if those requirements had been incorporated in her contract

with CitiMortgage. Neither Carpenter nor Citimortgage presented evidence that the terms of the contract between CitiMortgage and Freddie Mac were incorporated into Carpenter's note or mortgage. Therefore, this potential avenue for an affirmative defense of non-compliance with HAMP servicing requirements is not available to her.

### 2. Even Though the Terms within the HAMP Guidelines Are Mandatory in Nature, They Do Not Establish an Affirmative Defense, Because the HAMP Guidelines Do Not Have the Force and Effect of Law.

{¶ 18} An affirmative defense may be available if the mortgage servicing requirements are " ' * * * mandatory and expressly [require] compliance * * * 'and * * * the requirements ' * * * also have the force and effect of law * * *.' " *GMAC Mtge. of Pennsylvania v. Gray*, 10th Dist. No. 91AP-650, 1991 WL 268742, *6 (Dec. 10, 1991), quoting *Bankers Life Co. v. Denton*, 120 Ill. App.3d 576, 578, 458 N.E.2d 203 (1983). In other words, even if the terms within the HAMP guidelines, directives, and bulletins are found to be mandatory, and expressly require compliance, for those terms to create a private right on the part of a borrower, the terms themselves must also have the force and effect of law. Otherwise, an affirmative defense will not be created.

{¶ 19} Whether mortgage servicing requirements are mandatory and expressly require compliance depends on the language used within the servicing terms themselves. *See Bankers Life* at 578. In *Bankers Life*, the borrower raised an affirmative defense, alleging that the bank failed to comply with Housing and Urban

Development (HUD) servicing requirements. *Id.* at 577. When analyzing whether the language of the servicing requirements was mandatory, the court cited several sections of the relevant Code of Federal Regulations (C.F.R.); for example: "It is the intent of the Department [of Housing and Urban Development] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed," 24 CFR 203.500; and:

> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default *and at least 30 days before foreclosure is commenced * * *.* 24 CFR 203.604 (emphasis added);
>
> *Bankers Life* at 578-579.

In addition, the court noted that the word "shall" was used throughout the HUD requirements, indicating that the directives were mandatory in nature. *Id.*

{¶ 20} As in *Bankers Life*, the language cited by Carpenter in Freddie Mac Bulletin 2009-28 and the Treasury's Supplemental Directive 09-08 also appears to be mandatory in nature. Freddie Mac Bulletin 2009-28 states, "With this Bulletin, we are advising Freddie Mac Servicers that they *must* comply with the requirements set forth in [Treasury Supplemental Directive] 09-08 * * *." (Emphasis added.) Freddie

Mac: *Bulletin Number: 2009-28*, http://www.freddiemac.com/sell/guide/bulletins/pdf/ bll0928.pdf, 7 (accessed Feb. 16, 2012). Specifically, the sections of the Treasury's Supplemental Directive 09-08 incorporated in Freddie Mac Bulletin 2009-28 includes, "complete requirements and additional information with respect to determining when a Servicer must send a Borrower Notice and the requirements for the content of a Borrower Notice." *Id.* According to Supplemental Directive 09-08, "[a] servicer *must* send a Borrower Notice to every borrower that has been evaluated for HAMP but * * * is not offered an official HAMP modification * * *." (Emphasis added.) U.S. Dept. of the Treasury, *Supplemental Directive 09-08,* https://www.hmpadmin.com/portal/programs/ docs/hamp_servicer/sd0908.pdf, 1 (accessed Feb. 16, 2012). The explanations utilized in the Borrower Notice for non-approval "*must* provide the primary reason or reasons for the non-approval." (Emphasis added.) *Id.* at 2. Furthermore, these explanations "*must* relate to one of more of the Non-Approval/Not Accepted reason codes specified in Schedule IV of [Treasury] Supplemental Directive 09-06 (Home Affordable Modification Guidelines: Data Collection and Reporting Requirements Guidance)." (Emphasis added.) Freddie Mac: *Bulletin Number: 2009-28* at 7. As demonstrated above, the use of the word "must," as opposed to "may" or "should," is normally construed by courts to indicate mandatory terms requiring compliance. Carpenter correctly points out that the language found in Freddie Mac Bulletin 2009-28 and in Supplemental Directive 09-08 is mandatory in nature.

**{¶ 21}** But more is required for the establishment of an affirmative defense.

In addition to establishing that the terms found in Freddie Mac Bulletin 2009-28 and the Treasury's Supplemental Directive 09-08 are mandatory, and expressly require compliance, these terms must have the force and effect of law. In *Banker's Life*, the court found that the HUD servicing requirements were "adopted as regulations pursuant to the authority conferred on H.U.D. by the United State's Congress." 120 Ohio App.3d at 578, 458 N.E.2d 203. *Accord*, *GMAC Mtge. of Pennsylvania*, supra, 10th Dist. No. 91AP-650, 1991 WL 268742 at *6-7. In other words, the servicing requirements established by HUD were codified in the C.F.R., and were therefore determined by the court to have the force and effect of law.

{¶ 22} In arguing that the Freddie Mac Bulletins and Treasury Supplemental Directives carried the force and effect of law, Carpenter points to 15 U.S.C. 1639a(c), which states: "The qualified loss mitigation plan guidelines issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute standard industry practice for purpose of all Federal and State laws." *Id.* When read in the context of the statute as a whole, however, this section does not codify the Treasury's Directives. Rather, it appears to be intended to protect lending institutions from being held liable to their investors for failing to maximize profits while complying with HAMP or other qualified loss mitigation plans. This is evident from the following division of the statute, 15 U.S.C. 1639(d):

Scope of safe harbor

Any person, including a trustee, issuer, and loan originator, shall not be

liable for monetary damages or be subject to an injunction, stay, or

other equitable relief, based solely upon the cooperation of such person with a servicer when such cooperation is necessary for the servicer to implement a qualified loss mitigation plan that meets the requirements of subsection (a).

**{¶ 23}** Next, Carpenter points to the mandatory language found within the bulletins and directives themselves. This argument is also unconvincing. Although the language in the Treasury's Supplemental Directives requires certain procedures to be followed, "[t]he HAMP program itself is not codified as a public law." *Cleveland v. Aurora Loan Servs.*, N.D. CA No. C11-0773, 2011 WL 2020565, *3 (May 24, 2011); *Accord*, *Edwards,* 791 F.Supp.2d 144, 154. Nor is it subject to the Treasury's notice and comment rulemaking, or codified within any C.F.R. *Edwards* at 154.

**{¶ 24}** As previously noted, Congress bestowed on the Treasury Secretary broad discretionary power pertaining to the size, structure, scope, and duration of HAMP. *Nguyen,* N.D. Cal No. C-10-01712, 2010 WL 3894986, *1. Moreover, the Treasury Secretary "retains full discretion to end HAMP at any time and, as the agency already has done, to modify the program as it sees fit." *Edwards* at 154.

**{¶ 25}** Although the terms found within the Treasury's Supplemental Directive 09-08 and Freddie Mac Bulletin 2009-28 appear to be mandatory, neither HAMP itself nor the Treasury's guidelines has the force and effect of law. Therefore, no affirmative defense is available, and CitiMortgage is entitled to judgment as a matter of law.

{¶ 26} Carpenter's sole assignment of error is overruled.

### III.  Conclusion

{¶ 27} Carpenter's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Thomas L. Henderson
George Patricoff
Andrew D. Neuhauser
Lauren E. Dreshman
Hon. Mary L. Wiseman