[Cite as *PNC Mtge. v. Garland*, 2014-Ohio-1173.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PNC MORTGAGE, | ) | |
| | ) | CASE NO.  12 MA 222 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| COLLEEN M. GARLAND, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas
Court, Case No. 11 CV 3760.

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiff-Appellee: Attorney Joshua Epling
Attorney Barbara Borgmann
Laurito and Laurito, LLC
7550 Paragon Road
Dayton, OH  45459

For Defendants-Appellant: Attorney Bruce Broyles
5815 Market Street, Suite 2
Boardman, OH  44512

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  March 20, 2014

DeGenaro, P.J.

{¶1} Defendants-Appellant, Colleen Garland, appeals the November 15, 2012 judgment of the Mahoning County Court of Common Pleas granting summary judgment in favor of Plaintiff-Appellee, PNC Mortgage, in a foreclosure action. On appeal, Garland asserts that summary judgment was improper because there are genuine issues of material fact about whether PNC Mortgage complied with the face-to-face meeting requirements in 24 C.F.R. 203.604 and 203.605 prior to initiating foreclosure and whether PNC Mortgage provided Garland with a loan modification opportunity in compliance with the Home Affordable Modification Program (HAMP).

{¶2} Upon review, Garland's arguments are meritless. As an issue of first impression in this district, we hold that 24 C.F.R. 203.604 and 203.65 create conditions precedent to foreclosure, not affirmative defenses, and are therefore subject to the pleading requirements contained in Civ.R. 9(C). Garland waived her HUD violation arguments by failing to plead them with particularity in her Answer pursuant to Civ.R. 9(C).

{¶3} With regard to Garland's HAMP arguments, first, this court can consider Garland's untimely brief in opposition to summary judgment because the magistrate issued an order setting the matter for hearing in response to Garland's filing and the trial court never ruled on PNC Mortgage's motion to strike the untimely filing. With regard to the substantive HAMP arguments, courts have held that borrowers have no standing to enforce HAMP, or allege HAMP violations as an affirmative defense to foreclosure, unless there is evidence that the borrower was intended to benefit from the relevant servicing contract containing the obligation to follow HAMP, or where the HAMP requirements are specifically incorporated into the borrower's contract with the lender. Here, there is no reference to the HAMP program or other Treasury Department directives either in the note or mortgage and Garland put on no evidence that the terms of any applicable servicing agreement were intended to benefit her. Accordingly, based on the above, the judgment of the trial court is affirmed.

## Facts and Procedural History

**{¶4}** On October 2, 2008, Garland executed and delivered a promissory note to National City Mortgage, which was insured by the FHA. The note was secured by a mortgage on the property located at 2226 Hamilton Avenue in Poland. PNC Mortgage is National City Mortgage's successor by merger and is a division of PNC Bank, N.A.

**{¶5}** The Note provides the following with regard to default:

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. * * * In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**{¶6}** Similarly the Mortgage provides the following:

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by Regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

* * *

(d) Regulations of HUD Secretary. In many circumstances

regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

{¶7} On November 22, 2011, PNC Mortgage filed a complaint against Garland for foreclosure, asserting that terms of the note had been breached and that it was entitled to judgment in the amount of $97,051.77, plus interest and other expenses. Attached to the Complaint were the note and mortgage. PNC Mortgage generally pled that it had satisfied all conditions precedent pursuant to the note and the mortgage.

{¶8} On February 29, 2012, as no answer had been filed, PNC Mortgage filed a motion for default judgment, supported by the affidavit of Jacqueline Murphy, an authorized signer for PNC Bank N.A., the loan's servicer. Murphy averred that PNC Bank held a promissory note executed by Colleen Garland, with $97,051.77 at an interest rate of 6.75% still due, and that Garland had failed to make any payments due on or after March 1, 2011. She further averred that PNC Bank had therefore elected to "call the entire balance of said account due and payable, in accordance with the terms of the Note and Mortgage."

{¶9} On April 10, 2012, Garland filed a motion for leave to file an Answer instanter. As cause for her untimely Answer, she alleged she suffered from a serious medical condition that affected her memory; that she contacted the Bank to work out a resolution shortly after receiving the Complaint; and that in the meantime she was also pursuing a HAMP loan modification. Moreover, Garland asserted that she had a meritorious defense to present should she be permitted to answer. Over PNC Mortgage's objection, the trial court issued an order granting Garland leave to file an Answer.

{¶10} In her Answer, Garland generally raised a number of defenses, including that PNC Mortgage failed to comply with "HUD regulations" prior to accelerating the note and initiating foreclosure. Garland also raised the defense that PNC Mortgage failed to comply with the Home Affordable Modification Program (HAMP) by failing to review her

application for a loan modification in a proper and timely fashion and by their decision finding her ineligible for a loan modification even though her current monthly mortgage expenses exceeded 31% of her gross monthly income.

**{¶11}** On July 17, 2012, PNC Mortgage filed a motion for summary judgment, referencing the affidavit of Jacqueline Murphy along with the note and mortgage to demonstrate there were no genuine issues of material fact that Garland was in default of her obligations under the note and that judgment in its favor was proper. PNC Mortgage further argued that Garland failed to specify what HUD regulations and what provisions of HAMP had been violated in her Answer, and that Garland offered nothing to substantiate her claims that it had violated HAMP or HUD regulations.

**{¶12}** On August 28, 2012, Garland filed a brief in opposition to PNC Mortgage's motion for summary judgment without requesting leave to file an untimely pleading. Garland argued that PNC Mortgage failed to fulfill conditions precedent to the acceleration of the note and foreclosure of the mortgage, namely that it had failed to follow various HUD regulations and failed to properly evaluate her for a modification. Garland attached her own affidavit in which she averred that PNC Mortgage never offered her the opportunity to have a face-to-face meeting prior to the initiation of foreclosure proceedings. Additionally, Garland averred that PNC Mortgage evaluated her case for a loan modification under HAMP and that prior to the time the complaint was filed, she was offered modification payments of $1500 to $1600 per month, which far exceeded what was affordable, as 31% of her gross monthly income was $555.83.

**{¶13}** On August 29, 2012, the magistrate issued an order stating: "Due to recent filings, this matter is continued for 30 days. Hearing set for October 9, 2012 at 2:00 p.m."

**{¶14}** On September 12, 2012, PNC Mortgage filed a motion to strike Garland's brief in opposition to summary judgment because that brief had been filed well beyond the 14 day deadline provided by Local Rule 6(A)(2), and without leave of court. The trial court never ruled on this motion.

**{¶15}** On November 15, 2012, the trial court sustained PNC Mortgage's motion for summary judgment and granted the decree in foreclosure, finding no just cause for delay.

Garland never requested a stay pending appeal.

**Summary Judgment**

**{¶16}** In her sole assignment of error, Garland asserts:

**{¶17}** "The trial court erred in granting summary judgment."

**{¶18}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999).

**{¶19}** When moving for summary judgment, a party must produce some facts that suggest a reasonable fact-finder could rule in its favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." *Id.*, citing Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**{¶20}** Garland asserts there are genuine issues of material fact concerning whether PNC Mortgage complied with certain HUD regulations, which were conditions precedent in the note and mortgage, prior to accelerating the balance of the note and initiating foreclosure proceedings. Specifically, Garland asserts that PNC Mortgage failed

to attempt to arrange a face-to-face meeting with her and failed to properly evaluate her for loss mitigation prior to filing its complaint. *See, e.g.,* 24 C.F.R. 203.604 (contact with mortgagor) and 24 C.F.R. 203.605 (loss mitigation). Garland claims the affidavit she filed in support of her brief in opposition to summary judgment creates genuine issues of material fact on these issues. PNC Mortgage presents several arguments in response. The arguments raised by the parties will be discussed out of order for ease of analysis.

**Condition Precedent or Affirmative Defense**

**{¶21}** PNC Mortgage asserts Garland waived her 24 C.F.R. 203.604 (face-to-face meeting) and 24 C.F.R. 203.605 (loss mitigation) arguments by failing to plead them with particularity in her Answer pursuant to Civ.R. 9(C). Before we can address the waiver issue we must make a more fundamental determination as a matter of first impression in this district; whether 24 C.F.R. 203.604 and 203.605 create conditions precedent or provide affirmative defenses. "Whereas an affirmative defense is separate from the merits of the plaintiff's cause of action and bars recovery even when the plaintiff has established a prima facie case, a condition precedent is directly tied to the merits of the plaintiff's cause of action, which is itself contingent upon satisfaction of the condition." *National City Mortg. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, 913 N.E.2d 1007, ¶20 (10th Dist.).

**{¶22}** As recognized recently by the Second District, the condition precedent versus affirmative defense controversy with respect to compliance with HUD regulations has been often recognized by courts, yet rarely decided. *Wells Fargo Bank, N.A., v. Goebel.* 2d Dist. No. 25745, –N.E.3d– , 2014-Ohio-472, ¶16. *See, e.g.*, *BAC Home Loans Servicing, LP v. Taylor*, 2013-Ohio-355, 986 N.E.2d 1028, ¶17 (9th Dist.) (concluding it need not consider the distinction in the absence of any argument that homeowners waived the argument). Recently, in *Wells Fargo Bank, N.A., v. Aey*, 7th Dist. No. 12MA178, 2013-Ohio-5381, this court held that 24 C.F.R. 203.604 and 203.605 could be used "defensively" in a foreclosure action, but did not have to reach the issue of whether those HUD regulations were conditions precedent or affirmative defenses to foreclosure. *Id.* at ¶37-38.

**{¶23}** Now the issue is squarely before us. The distinction is important because each carries with it a different burden for pleading and summary judgment practice. For example, if compliance with the above HUD regulations is a *condition precedent*, the bank must generally aver in its complaint that it has complied with all conditions precedent, the borrower then has a reciprocal burden to allege with specificity and particularity how the bank failed to comply. Civ.R. 9(C). In a motion for summary judgment, the bank would then bear the burden of establishing the absence of any issue of material fact on the issue of whether it complied with the specific HUD regulation. *See Dresher* at 294; *U.S. Bank, N.A. v. Detweiler*, 191 Ohio App.3d 464, 2010-Ohio-6408, 946 N.E.2d 777, ¶54-57 (face-to-face meeting is condition precedent); *LSF6 Mercury REO Investments Trust v. Locke*, 10th Dist. No. 11AP–757, 2012-Ohio-4499, ¶11 (notice is condition precedent); Civ.R 56(E); *Dresher* at 294.

**{¶24}** Alternatively, if compliance is deemed an *affirmative defense*, the bank has no pleading burden in its complaint; the borrower must generally allege non-compliance as an affirmative defense in its answer. And on summary judgment, the bank has no burden to discuss compliance with HUD regulations in its motion, whereas the borrower bears the burden of proving its affirmative defense via the brief in opposition to summary judgment. *See, e.g., Goebel*, *supra*, at ¶19.

**{¶25}** Resolution of this issue requires us to analyze the overall regulatory scheme established by HUD, express language of particular sections, as well as case law discussing other particular sections from the regulatory scheme than those at issue here. We hold that compliance with HUD regulations is properly characterized as a condition precedent for pleading purposes in foreclosure litigation.

**{¶26}** First, the overall regulatory scheme enacted by HUD must be considered. Importantly, 24 C.F.R. 203.500 states: "It is the intent of the Department [of Housing and Urban Development] that no mortgagee shall commence foreclosure * * * until the requirements of this subpart have been followed." As to specific regulatory language pertinent to this appeal, 24 C.F.R. 203.606(a) provides: "Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met.

The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid * * *."  Servicing requirements include the face-to-face meeting in 24 C.F.R. 203.604(b) which provides: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. * * *."  Subsection (c) goes on to provide several exceptions to the face-to-face meeting requirement.  Finally, the evaluation for loss mitigation is required by 24 C.F.R. 203.605(a): "Before four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at 203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. * * * "

{¶27}  These regulations evince HUD's clear intent that banks must comply with the face-to-face interview and loss mitigation evaluation requirements before commencing foreclosure actions.  In other words, a bank's foreclosure action is contingent upon satisfaction of these regulations and is therefore a condition precedent.

{¶28} Second, case law from this and other districts hold that allegations regarding noncompliance with *notice provisions* in notes and mortgages are not only conditions precedent to foreclosure, they also are subject to Civ.R. 9(C).  *See Huntington v. Popovec,* 7th Dist. No. 12 MA 119, 2013-Ohio-4363, ¶15; *First Financial Bank v. Doellman,* 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶20-21.  Compliance with the HUD regulations implicated here is analogous to compliance with notice requirements in *Popovec* and *Doellman.*

{¶29} We recognize that our decision today is contrary to one reached very recently by the Second District in *Goebel, supra,* 2014-Ohio-472, at ¶23-25, holding that a bank's failure to comply with 24 C.F.R. 203.604 is an equitable affirmative defense. However, opinions of our sister districts are merely persuasive, not binding.  Further, even though the *Goebel* court conceded it was the clear intent of HUD that no bank shall commence foreclosure until the servicing requirements have been met, the court

nonetheless rejected the condition precedent approach. *Id.* at ¶25. It did so because it determined such a construction would be "unduly harsh" to the lender, insofar as "many of the regulations impose a deadline for a lender to act[,] [and] [o]nce a particular deadline has expired, the particular servicing requirement would *forever* prevent foreclosure." (Emphasis added.) *Id.* at ¶23, fn. 4.

{¶30} We disagree with this conclusion. Under our reading of the regulations, the specific time deadlines referenced by the court are aspirational, whereas the obligation to perform those conditions (i.e., the requirement to actually have a face-to-face meeting, absent one of the stated exceptions), is mandatory. For example, if a bank commences a foreclosure action at the earliest possible time, the day after the third payment is missed, the bank's failure to have the face-to-face meeting *within the first three months of default*, would, absent one of the exceptions, bar the bank from filing the foreclosure action. On the other hand, if the bank waited until the borrower missed six payments, for example, the bank's failure to have the face-to-face meeting *within the first three months of default*, would not bar the foreclosure action, as long as the bank held the meeting sometime before filing the action; e.g. in the fourth or fifth month. Accordingly, we decline to follow *Goebel.*

{¶31} Thus, for all of the above reasons, we hold that compliance with the stated HUD regulations is a condition precedent, subject to the pleading requirements of Civ.R. 9(C).

**Waiver**

{¶32} Having determined that 24 C.F.R. 203.604 and 203.605 create conditions precedent to foreclosure, we turn to PNC Mortgage's assertion that Garland waived her 24 C.F.R. 203.604 arguments by failing to plead them with particularity in her Answer. Civ.R. 9(C) provides: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." By contrast, "[a] denial of performance or occurrence shall be made *specifically and with particularity*." (Emphasis added.) *Id.* Conditions precedent that are not denied in the manner provided by Civ.R. 9(C) are deemed admitted. *Fifth Third Mtge.*

*Co. v. Orebaugh*, 12th Dist. No. CA2012–08–153, 2013-Ohio-1730, ¶29, citing *First Financial Bank v. Doellman*, 12th Dist. No. CA2006–02–029, 2007-Ohio-222, ¶2; *see also* Civ.R. 8(D); *Huntington v. Popovec,* 7th Dist. No. 12 MA 119, 2013-Ohio-4363, ¶15.

**{¶33}** Here, PNC Mortgage alleged in its Complaint that "it has satisfied all conditions precedent pursuant to the Promissory Note[,]" and that it "has satisfied all conditions precedent pursuant to the Mortgage."  This is sufficient under Civ.R. 9(C) to shift the burden to Garland to assert non-compliance with specific HUD regulations.

**{¶34}** In her Answer, Garland's allegations regarding non-compliance with HUD regulations were general in nature; she did not cite to any specific regulations:

> 11. Plaintiff failed to comply with the regulations issued by the Secretary of Housing and Urban Development in order to require immediate payment in full and Plaintiff failed to comply with HUD regulations prior to acceleration of the amounts due under the promissory note.
>
> 12. Plaintiff failed to comply with the regulations issued by the Secretary of Housing and Urban Development in order to require immediate payment in full and Plaintiff failed to comply with HUD regulations prior to acceleration of the amounts due under the mortgage.

**{¶35}** Because Garland failed to state with the specificity required by Civ.R. 9(C), precisely which HUD regulations PNC Mortgage failed to comply with before filing the instant foreclosure action, she was barred from later contesting the noncompliance in her brief in opposition to summary judgment, and consequently, now on appeal.  *See, e.g.*, *Satterfield v. Adams Cty./Ohio Valley School Dist.*, 4th Dist. No. 95CA611, 1996 WL 655789, *5 (Nov. 6, 1996) (where defendant failed to specifically deny performance of a condition precedent in its answer pursuant to Civ.R. 9(C) compliance was deemed admitted and defendant could not subsequently raise the issue on appeal.)  *See also Huntington, supra* at ¶16 (homeowner was barred from contesting bank's performance of conditions precedent where she failed to file an answer.)

**Untimely Opposition Brief**

{¶36} PNC Mortgage additionally argues that because Garland's brief in opposition to summary judgment and accompanying affidavit were untimely filed without leave of court, the trial court properly disregarded them and granted summary judgment in PNC Mortgage's favor. Since Garland has waived her HUD violation arguments, we only need to consider this argument as it relates to her argument that PNC Mortgage failed to properly evaluate her for a loan modification pursuant to the Home Affordable Modification Program (HAMP).

{¶37} Garland did specifically allege in her Answer that PNC Mortgage failed to comply with HAMP by failing to review her application for a loan modification in a proper and timely fashion and by their decision finding her ineligible for a loan modification even though her current monthly mortgage expenses exceeded 31% of her gross monthly income. Garland also argued in her brief in opposition to summary judgment, and avers in her attached affidavit, that PNC Mortgage failed to properly evaluate her for a loan modification pursuant to HAMP.

{¶38} Civ.R. 56(C) provides: "The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits." However, Local Rule of Civil Procedure 6(A)(2) provides that opposition briefs to all motions shall be filed not later than 14 days from the date the motion was filed unless an extension is granted with leave of court. That rule continues to state, "In no event shall an opposition brief be filed later than 5 days prior to the non-oral hearing date."

{¶39} Here, there was no hearing date set at the time Garland filed her untimely brief in opposition, thus, Civ.R. 56(C) would not apply. Under Local Rule 6(A)(2), Garland's brief in opposition was due by 14 days after the motion was filed on July 17, 2012, which would be July 31, 2012. Garland submitted her brief in opposition four weeks late, on August 28, 2012, without seeking leave of court to do so.

{¶40} However, *the day after* Garland filed her untimely opposition brief the magistrate issued an order stating: "Due to recent filings, this matter is continued for 30

days. Hearing set for October 9, 2012 at 2:00 p.m." Although PNC Mortgage moved to strike Garland's untimely brief, the trial court never ruled on that motion. Typically, where a trial court fails to rule on a pending pre-trial motion and proceeds to judgment, there is a presumption that it was overruled. *See Scott v. Falcon Transport. Co.*, 7th Dist. No. 02 CA 145, 2003-Ohio-6725, ¶9.

**{¶41}** Looking at the totality of the circumstances in this case, i.e., the magistrate's order setting a hearing date in response to Garland's untimely filing, the trial court's failure to rule on the motion to strike the untimely filing, and out of considerations of fairness, we will consider Garland's untimely brief in opposition as part of our de novo review.

### HAMP as a Defense to Foreclosure

**{¶42}** HAMP program directives are distinct from the HUD regulations; HAMP is a program initiated by the United States Treasury pursuant to the Emergency Economic Stabilization Act (EESA), 12 U.S.C. 5201, et seq., which was enacted by Congress in response to the economic downturn of 2008. There is a dearth of Ohio case law concerning the use of HAMP as a defense to foreclosure. However, the Second District, applying federal case law and Ohio third-party beneficiary law, held that unlike HUD violations, HAMP violations ordinarily cannot constitute a defense to foreclosure; unless there is evidence the borrower was intended to benefit from the servicing contract or where the HAMP requirements are incorporated into the borrower's contract. *See CitiMortgage, Inc. v. Carpenter*, 2d Dist. No. 24741, 2012-Ohio-1428, ¶2, ¶14, citing *Edwards v. Aurora Loan Servs.*, LLC, 791 F.Supp.2d 144, 152-153 (D.D.C.2011); *Markle v. HSBC Mortgage Corp. (USA),* 844 F.Supp.2d 172, (D.Mass. 2011); *Marks v. Bank of America, N.A,* D. Ariz. No. 03:10–cv–08039–PHX–JAT, 2010 WL 2572988, *5–7; *Warren v. U.S. Bank of America*, S.D. Ga No. 4:11–cv–70, 2011 WL 2116407, *2–5 (May 24, 2011).

**{¶43}** As explained by the Second District, the Treasury was granted broad discretionary authority under the Emergency Economic Stabilization Act (EESA), 12 U.S.C. 5201, et seq. to implement foreclosure mitigation efforts, pursuant to which the Treasury introduced HAMP. " 'HAMP was aimed at helping homeowners who were in or

were at immediate risk of being in default on their home loans by reducing monthly payments to sustainable levels.' * * * HAMP works by providing financial incentives to participating mortgage servicers to modify terms of eligible loans.' " (Citations omitted.) *Carpenter* at ¶12.

**{¶44}** "Participants in HAMP include servicers with loans guaranteed by Government Sponsored Enterprises (GSE), such as Fannie Mae and Freddie Mac, as well as loans that are not guaranteed, known as non-GSE loans. * * * 'The Department of the Treasury and Fannie Mae have issued a series of directives that provide guidance to mortgage servicers implementing HAMP.' " (Citations omitted.) *Carpenter* at ¶13.

**{¶45}** Those "[s]ervicers who enter into a contract with Fannie Mae and have their loans guaranteed by Fannie Mae are required to participate in HAMP and to abide by Fannie Mae servicing guides and bulletins, which are expressly incorporated into the servicing contact." *Carpenter* at ¶13, citing *Markle v. HSBC Mortgage Corp. (USA),* 844 F.Supp.2d 172, (D.Mass. 2011). Other servicers who enter into a contract with Freddie Mac to have the loans guaranteed by Freddie Mac are subject to similar requirements. This was the factual situation in *Carpenter*. *See id*. In addition, "[n]on–GSE servicers who opt into participating in HAMP by signing a Servicer Participation Agreement (SPA) are also required to evaluate borrowers for HAMP eligibility and must abide by Treasury's handbooks and directives." *Carpenter* at ¶13, citing *Markle*; *Edwards v. Aurora Loan Serv.'s, LLC,* 791 F.Supp.2d 144, 147 (D.D.C.2011). (It seems unclear from the record which of those situations exist in this case.)

**{¶46}** However, regardless of whether the loan is guaranteed by a GSE or is a non-GSE loan, where the servicer has opted to participate in HAMP the obligation for the servicer to participate in HAMP is contained in a *separate* contract, to which the *borrower is not a party* (either a servicer participation agreement between the federal government and the servicer, or a servicing contract between the servicer and Fannie Mae or Freddie Mac, as applicable). Accordingly, as a general matter, "regardless of whether a servicer is the holder of a GSE loan or a non-GSE loan, most courts have found that borrowers do not have standing to enforce the terms of HAMP as third-party beneficiaries." *Carpenter*

at ¶14.

**{¶47}** This is so because, as the Second District went on to explain, under third party beneficiary law the borrower cannot use HAMP violations as a defense unless the borrower has presented evidence that she was intended to benefit from the servicing contract or where the HAMP requirements are specifically incorporated in the borrower's contract:

> "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991).

> An affirmative defense, like a cause of action, is a claim of right. In a cause of action, the claim of right is a claim to relief; in an affirmative defense, the claim of right is the avoidance of liability under another's claim to relief. It follows then, that a party seeking to assert an affirmative defense under a contract must either be a party to the contract or an intended third-party beneficiary of a contact. In the HAMP context, a New York court concluded that, "an alleged breach of the [HAMP Service Provider] Agreement cannot form the basis of a defense, because [the borrower] cannot be considered an intended beneficiary of the Agreement, as there is neither evidence nor allegation that it was [the bank's] intention to benefit homeowners in entering into the Agreement." *Wells Fargo Bank v. Small*, 2010 N.Y. Slip Op 30424U, *5, 2010 N.Y. Misc. LEXIS 2478 (N.Y.Sup.Ct. Feb. 16, 2010).

> * * *

> Carpenter contends that there is a genuine issue of material fact whether the evaluation she received conformed with Freddie Mac Bulletin 2009–28 and the Treasury's Supplemental Directive 09–08. But that issue of fact can only be material if Carpenter had an affirmative defense to this foreclosure action based on CitiMortgage's alleged non-conformity.

Carpenter does not contend that she is an intended third-party beneficiary to the contract between Citimortgage and Freddie Mac. Carpenter asserts that she has an affirmative defense, even though she is not a beneficiary to the servicer contract, due to "CitiMortgage's failure to follow Freddie Mac Bulletin [20]09–28 and HAMP Supplemental Directive 09–08." We disagree. In order for Carpenter to have an affirmative defense based upon the contract terms between CitiMortgage and Freddie Mac—terms incorporating Freddie Mac Bulletins and Treasury Supplemental Directives—Carpenter had to have presented evidence establishing a genuine issue of material fact as to her status as an intended third-party beneficiary to the servicer contract. She did not present any evidence of that. Therefore, Carpenter has no standing to assert an affirmative defense on her loan contract, and CitiMortgage is entitled to judgment as a matter of law.  * * *

Even without being an intended third-party beneficiary of the servicer contract between CitiMortgage and Freddie Mac, Carpenter would be entitled to an affirmative defense based upon CitiMortgage's failure to have complied with HAMP servicing requirements if those requirements had been incorporated in her contract with CitiMortgage. Neither Carpenter nor Citimortgage presented evidence that the terms of the contract between CitiMortgage and Freddie Mac were incorporated into Carpenter's note or mortgage. Therefore, this potential avenue for an affirmative defense of non-compliance with HAMP servicing requirements is not available to her.

*Carpenter* at ¶15-17.

**{¶48}** Similarly here, Garland put on no evidence that the terms of any servicing-related contract that the servicer, PNC Bank, may have entered into, were intended to benefit Garland as the borrower.  Further, unlike the HUD regulations, which are specifically referenced in the note and mortgage, there is no mention of the HAMP

requirements in those instruments. For this reason alone, Garland's HAMP argument is meritless.

{¶49} Further, even if HAMP violations could be used as a defense to foreclosure, there seems to be an additional evidentiary issue: the trial court never took judicial notice of the HAMP directives. Unlike the HUD requirements, which are contained in the Code of Federal Regulations and have the force of law, HAMP requirements are found in directives put forth by the U.S. Treasury and do not have the full force and effect of law. *See Carpenter* at ¶13 citing the Treasury Directives found at https://www.hmpadmin.com/ and *Carpenter* at ¶22, ¶25. It appears trial courts can take judicial notice of the HAMP directives, *see, e.g., Caires v. J.P. Morgan Chase Bank, N.A.*, 880 F.Supp.2d 288, 304 (D.Conn. 2012) (citing cases), but no request was made for the trial court to do so in this case.

{¶50} In any event, Garland's affidavit in support of her brief in opposition to summary judgment demonstrates that she was evaluated under HAMP and was in fact offered a modification, but that she rejected it because the terms were not favorable enough for her. PNC Mortgage is correct that Garland has pointed to no portion of any applicable directive or regulation that requires lenders to structure loan modifications based solely on what the borrower has alleged she is able to pay. Accordingly, Garland's HAMP arguments are meritless.

### Conclusion

{¶51} Compliance with the HUD regulations at issue herein, 24 C.F.R. 203.604 and 203.65 is properly characterized as a condition precedent for pleading purposes in foreclosure litigation. Thus, a bank must generally plead in its complaint that it has complied with the HUD regulations, which shifts the burden to the borrower to plead with particularity in the answer, pursuant to Civ.R. 9(C), which specific regulations were not complied with, in order to preserve the issue. Then upon summary judgment, the burden shifts back again to the bank, which must provide evidence sufficient to dispel a genuine issue of material fact, that it complied with the specific HUD regulation raised by the borrower in its answer. Here, PNC generally averred in its complaint that it complied with

all HUD regulations prior to filing foreclosure proceedings. However, Garland waived her HUD violation arguments by failing to plead them with particularity in her answer pursuant to Civ.R. 9(C).

{¶52} With regard to Garland's substantive HAMP arguments, courts have held that borrowers have no standing to enforce HAMP, or allege HAMP violations as an affirmative defense to foreclosure, unless there is evidence that the borrower was intended to benefit from the relevant servicing contract containing the obligation to follow HAMP or where the HAMP requirements are specifically incorporated into the borrower's contract with the lender. Here, there is no reference to the HAMP program or other Treasury Department directives in either the note or mortgage and Garland put on no evidence that the terms of any applicable servicing agreement were intended to benefit her. Accordingly, based on the above, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.